Mr. Justice Wylie
delivered the opinion of the eoiirt:
The plaintiff was the wife of Nathaniel H. Campbell, a citizen of Bedford County, Virginia. On the 12th day <>f November, 1866, she procured from the defendant, in the', city of New York, a policy, in her own favor, on the life of her husband, for the sum of $5,000, subject, among others, to the following conditions: “ That, in the opinion of the surgeon-in-chief of this company, the party insured did not die of intemperance, with which disease the party is now, or is supposed to be, affected; nor by any disease produced or aggravated by said disease. But if it is decided by the surgeon-in-chief that the party did die of said disease, or any other produced by said disease, then the company will only pay to the assured, and does agree to pay to the assured, within the above-mentioned time, an amount equal to all the premiums paid to the company by the assured, with compound interest thereon, equal to the average of what the funds of the company have earned during the same time, as shall be stated by the treasurer — deducting from this amount only *251 such sums as have actually been paid for the medical examination of the insured, and for commission on the premiums on this policy.”
For the assured, this would appear to have been a most favorable arrangement. At the time of the insurance the husband was affected, or was supposed to be affected, with “ the disease of intemperance.” The policy held out to him a reward of $5,000 to be paid to his widow, upon his death, on condition of his reform; and promised that, even should his death be the result of his continued intemperance, all the premiums which had been received, with compound interest thereon, should be returned to his widow. The only advantage to the company was to be the retention of the premiums which had been received, in case the husband should be the survivor — most generally a remote contingency when the husband is addicted to intemperance.
Of course terms like these could be obtained only upon conditions, and one of the conditions in the present case was that which has just been quoted.
• Within sixty days from the date of the policy, and when but one premium had been paid, the husband died. Payment of the whole $5,000 was then demanded by the widow, but the company declined to pay it on the ground that, in the opinion of its surgeon-in-chief, his death had been produced by intemperance.
After a delay of more than two years, the present action was brought by the widow against the company, and service of the writ was obtained upon an agent of the company having an office, and doing business for his principal, in this District.
The declaration sets out the policy of insurance, at length, but contains no averment that the condition requiring the production of a decision of the surgeon-in-chief of the company as to the cause of death had been performed, nor any averment in excuse of its non-production,
The cause was tried upon two of the defendant’s pleas, one of which averred simply that insured had in fact died in consequence of intemperance; and the other that the surgeon-in-chief of the company had decided that such had been the cause of his death.
*252 The plaintiff closed her testimony without having either produced the decision of the surgeon-in-chief, or shown any excuse for the omission.
The defendant then offered in evidence a certificate from the surgeon-in-chief to sustain the issue on its part, under the second plea; but the offer was objected to by the plaintiff, and the evidence was excluded by the court.
But inasmuch as we find, in the record, no bill of exceptions taken by the defendant to this ruling, we are in ignorance of the kind of certificate which was thus offered, as well as of the reasons of the court for its rejection as evidence.
If the offer was rejected because the surgeon’s certificate was made or procured through fraud, or because he was interested in the cause, or for any other reasons supposed to be valid and sufficient to relieve the plaintiff from the performance of the condition in the contract on which she had sued, the facts ought to have been averred in the declaration, else they ought not to have been heard in objection to the evidence.
But in the absence of a bill of exceptions, we have nothing save conjecture to enlighten us as to the reasons influencing the mind of the chief-justice to reject the offer in question.
Thus the plaintiff having failed to produce the decision of the surgeon-in-chief as a part of her own case, and the court having rejected the offer of it when made by the defendant, the issue under the second plea was disposed of quite effectually.
But the question lay at the foundation of the plaintiff’s own case, and was patent on the face of the contract and of the declaration. The declaration having itself set out the condition upon which the plaintiff could alone maintain an action, and containing no averment to excuse the plaintiff from procuring its performance, the plaintiff’s difficulty was not removed by the rejection of this evidence when offered by the defendant. On the contrary, her difficulties were thereby aggravated; for the defendant’s offer having been rejected, and no bill of exceptions taken, the surgeon’s certificate was not in evidence for the defense, and therefore -subject to no objection on the part of the plaintiff, either as *253 to its conclusiveness in form, or for any fraud, or interest of the referee or of the company in making or procuring it y aud the plaintiif was left with her ease closed, and no evidence in, on her part, of the performance of the condition on which her right to maintain the action depended, nor any excuse, either averred in her declaration or proved at the trial, for her omission to procure its performance.
The cause of the plaintiif was therefore lost upon her own showing, unless the condition in question was void in law upon its face. But if we do not misunderstand the instruction given to the jury on this point by the learned chief-justice, he charged the jury that the condition was void, in law. The following was his language, which we find brought into the record by one of the defendant’s exceptions:
“The defendant, as before remarked, claims that he has satisfactorily and by credible proof vindicated the position assumed, that the defendant [the insured ?] died of a disease produced by intemperance. Now, if you find that the defendant has sustained, by clear and satisfactory proof, this issue of fact, you will find for the defendant. Nor need you pause in your deliberations to contemplate the issue involved in the submission of the case to the surgeon of the company, or the determination of the company upon the report of their surgeon adversely to the case. You may lay that out of view entirely under the decision of the court; but in laying it out of view do not misunderstand the court as assuming that it is set aside, because that decision was either right or wrong.. The decision is simply not to affect your judgment one way or the other. It may be right or wrong. You are impaneled to determine whether it is right or wrong, upon the facts presented to you, and not facts presented to the company, and while you will disregard it you will not permit the removal of this issue from the case to prejudice an impartial estimate of the facts brought into the enlightenment of the issue that remains for you to determine.
The reason why the court has postponed this issue is because they have regarded, in the current history of the case,, and still regard, any undertaking between parties that, in effect and substance, commits the judgments of the rights of two parties to the determination of one of them, to be- *254 void as against public policy. If the doctrine were to prevail that a man might bind himself by seal to commit his property, life, and personal rights to the arbitrament of a party in contract with him, the effect would be to throw the weak into the hands of the strong; and it is to prevent this state of things that the law has declared, and does declare, that the forum of justice shall be the interpreter of the rights of parties. This is the reason why the court deemed it essential to justice, and in vindication of law, to pronounce the reference to the surgeon-in-chief as a void reference in this undertaking, and to treat it as a blank.”
If these doctrines be correct, then parties themselves ought not to be allowed to settle their own controversies, for this, too, would oust the courts of their jurisdiction. For all that a party may do himself, he can bind himself to do, if such should be the decision of his referee. It is on this ground only that a court of equity will sustain a bill for the specific performance of an award. In Wood vs. Griffith, 1 Swanson R., 54, Lord Eldon said: “That a bill will lie for the specific performance of an award, is clear, because an award supposes an agreement between the parties, and contains no more than the terms of that ag'reement ascertained by a third person ; and then this bill calls only for a specific performance of an agreement, in another shape.”
These are not the doctrines of the law, as declared by the Supreme Court of the United States, in United States vs. Robeson, 9 Peters, 326, where the court say: “ Where the parties in their contract fix on a certain mode by which the amount to be paid shall be ascertained, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. He cannot compel the payment of the amount claimed unless he shall procure the kind of evidence required by the contract, or show that, by time or accident, he is unable to do so.”
The doctrine of this decision was elaborately and with much learning and ability vindicated by the supreme court of Pennsylvania in The Mon. Nav. Company vs. Fenlon, 4 W. and S., 205, in which case the referee was a stockholder in the company, and therefore interested in the result, and yet *255 bis award was held to be a sine qua non in the plaintiff’s case because such was the contract of the parties.
The decisions to the same effect in that State, and other States, as well as in England, may be found so readily by reference to the digests, and are so numerous and so uniform, that it would be rather an ostentation of learning than necessary to refer to them all on this occasion.
The doctrine is, indeed, as ancient as the law itself, as may be seen in Ughland's Case, 7 Coke’s R., and Holdipp vs. Otway, 2 Saunders R., 106.
“This last case was cited” (says Sergeant Williams in his note) “by Eyre, C. J., in French vs. Campbell, 2 H. Bl., 178, who says: ‘Every possible condition upon which money is to become payable must be performed, or must be dispensed with upon sufficient grounds, before the money is demandable in an action; and in the declaration in which it is demanded it must appear that the condition has been performed, if not literally, at least substantially; or that, by reason of some default in the opposite party-, the performance of the condition has been prevented, which dispenses with the performance.’ ”
In Scott vs. Avery, 36 E. L. & E. Rep., 18, the lord chancellor said: “If I covenant with A not to do a particular act, and it is agreed between us that any- question which might arise should be decided by an arbitrator, without bringing an action, then a plea to that effect would be no bar to an action; but if we agreed that J. S. was to award the amount of the damages to be recoverable at law, then if such arbitration did not take place, no action could be brought.”
And in the same case Lord Campbell, C. J., said: “While this case had been going on, the question had been substantially decided in the court of exchequer, during last Hilary term, in the case of Brown vs. Overbury, Excheq. R., 715 ; S. C. 31 Eng. R., 610. That was an action on a horse-race. The plaintiff, who had contributed to the sweepstakes, said that his horse had won the race, and he brought his action against the stake-holder to recover the amount of the stakes. But it was a condition in the race that the stewards should decide who was entitled to the stakes. It turned out that the stewards had not decided, for they differed in their opinions. *256 Then he attempted to show that his horse had won the race. But the judge, presiding at the trial, held that he could not prove that, because, even if the horse had won, the action could not be brought until the question had been decided by the stewards. It was then taken before the court of exchequer, which decided that the ruling of the learned judge was correct, and the nonsuit was confirmed.”
And the decision of the House of Lords in Scott vs. Avery was in accordance with these opinions.
But, in our judgment, the decision of the King’s Bench in Worsley vs. Wood, 6 Term R., 710, a decision which has never, so far as we have been able to find, been called in question, either in this country or in England, is clearly in point, and decisive of the present case. The policy of insurance in that case contained a condition that “persons insured shall give notice of the loss, forthwith deliver in an account, and procure a certificate of the minister, churchwardens, and some reputable householders of the parish, importing that they- knew the character, &c., of the assured, and believed that he really sustained the loss and without fraud ;” and the court held that the procuring of such a certificate was a condition-precedent to the right of the assured to recover; and that it was immaterial that the minister, &c., wrongfully refused to sign the certificate.
Lord Kenyon, C. J., said: “It was competent to the insurance office to make the stipulations stated in their printed proposals; they had a right to say to individuals who were desirous of being insured, ‘ Knowing how liable we are to be imposed upon, we will, among other things, require that the minister, church-wardens, and some of the reputable inhabitants of your parish shall certify that they believe the loss happened by misfortune, and without fraud, otherwise we will not contract with you at all.’ If the assured, say that the minister and church-wardens may obstinately refuse to certify, the insurers answer, ‘ We will not stipulate with you on any other terms.’ Such are the terms on which I understand this insurance to have been effected; and, therefore, I am clearly of opinion that there is no foundation for the action.”
It is worthy of note here, also, that the result in this case vindicated the course taken by the minister and church-war *257 dens 5 for the claim was shown to he fraudulent. No arguments or illustrations of our own could add to the force and clearness of this opinion. We think it conclusive of the question and of the present cause.
Up to this point we have been examining the case as it may be affected by the doctrine of the law, which requires the plaintiff to aver and prove the performance of a condition-precedent, to enable her to maintain an action under the contract.
But the learned chief-justice seems to have held the opinion that if the condition to be performed constituted the procuring of a decision of some named referee, who was in the employ of the adverse party, such condition was void, and therefore its performance need neither be averred in the declaration nor proved at the trial.
That the mere fact of the referee being- in the service of one of the parties is no objection, in law, to the validity of the condition, is a proposition too plain, we think, to require an argument. We are, therefore, led to the opinion that it was the intention of the chief-j ustice to be understood by the jury, in that portion of his charge which was excepted to by the defendant, and quoted above, as affirming that the agreement to refer the cause of the insured’s death, in the present case, to the decision of the surgeon-in-chief of the company, was void, because it would have .the effect to oust the courts of their jurisdiction to decide that question — and not merely because the referee was in the service of the company.
It is not to be denied that a mere agreement between parties, that any future differences growing out of their contract shall be decided by arbitrators, or referees, thereafter to be chosen, will not be allowed by the courts to oust their jurisdiction.
But in this branch of the law there exist certain distinctions which, if carefully observed and followed, will, in our judgment, reconcile the authorities, and produce a beautiful correspondence, where, at first view, there may appear nothing but a conflet of authorities.
The leading case, on this question, was that of Kill vs. Hollister, 1 Wilson’s R., 129, decided by the court of King’s Bench. The following is the condensed and careful opinion in this *258 case: “ This is an action upon a policy of insurance, wherein a clause was inserted that, in case of any loss or dispute about the policy, it should be referred to arbitration; and the plaintiff avers, in his declaration, that there has been no reference. Upon the trial, at Guildhall, the point was reserved for the consideration of the court, whether this action well laid before reference had been. And by the whole court: If there had been a reference depending, or made and determined, it might have been a bar; but the agreement of the parties cannot oust this court; and as no reference has been, nor any is depending, the action is well brought and the plaintiff must have judgment. ”
To the same effect are Thompson vs. Charnock, 8 T. R., 139; Goldstone vs. Osborne, 2 C. and P., 550, and Street vs. Rigby, 6 Vesey, 818; following a prior decision made by Lord Thurlow, to which may be added, also, the opinion of the Lord Chancellor in Scott vs. Avery, already quoted.
These decisions, however, do not apply to an agreement where the parties have actually chosen and named the referee; for in such a case the court, in Kill vs. Hollister, say the reference might be pleaded in bar of the action. It is only the imperfect and executory agreement to have a reference, entered into hereafter, which the court say will not oust its jurisdiction. It is because no reference has been agreed upon, and settled between the parties, that the agreement is not a bar.
An imperfect and executory agreement such as that referred to, cannot be enforced in equity for the reason that a court of equity will not and cannot compel the parties to come toan agreement in the choice ofreferees. Ifone ofthe parties should say, I decline to choose an arbitrator myself, and am not willing to consent to the choice made by my adversary, how could a court of equity compel him to carry out his contract? And, even if it had the power to do so, it would not, in the exercise of its discretion over such matters, for other reasons stated by Lord Eldon in Street vs. Rigby.
If the controversy, therefore, be not in effect actually re-erred, by such an agreement, as it certainly is not, according to these decisions, it must remain under the jurisdiction of the courts, and a plea setting up such agreement is, therefore, no bar.
*259 Suppose the court in Kill vs. Hollister had held the plea in bar to be good, what would have been the consequence ? In the first place, judgment would have gone for the defendant, and then the only remedy left to the plaintiff would have been an action on the agreement to refer, which the defendant had refused to comply with. In such an action, the breach to be alleged must be the defendant’s refusal to submit the controversy to arbitration. But what would be the rule of damages on such an issue? It must be the amount lost by the plaintiff in being defeated in procuring the arbitration, by the refusal of the defendant to choose. But who can tell on whom or what character of persons the choice might have fallen for arbitrators; or what evidence might have been received by them$ or what would have been their award, whether in favor of the plaintiff at all, or, if in his favor, how much ? It would be impracticable in such an action to find any rule of damages; and the consequence would be, that the plaintiff would get a verdict for nominal damages only. Thus the plaintiff must have found himself doubly defeated; first by the plea in bar of his action, and then by the verdict in his favor for nominal damages, to which the court had driven him by sustaining the plea.
Of course an agreement for reference such as that, followed as it must be by consequences such as these, could not be construed to oust any court of its jurisdiction.
This is the argument, as we understand it, of Lord Eldon in Street vs. Rigby. “ Suppose,” said he, “ an action brought,” (on such an agreement to refer.) “ The question would be, what damages would have been, if the defendant had joined, and named an arbitrator, a ud evidence had been produced (and what that would be could by no means be correctly proved) and an award had been made, giving some supposed sum, which no proof could ascertain. The effect, therefore, of such a covenant, is that as the damages are not to be ascertained by evidence, nominal damages only can be got. But,” he adds, “ there are prudential ways of drawing these articles. There might have been an agreement for liquidated damages to enforce a specific performance, if an action could not produce sufficient damages, or equity would not entertain a bill for specific performance.”
*260 The effect of these decisions, therefore, is this, and nothing more, that an agreement to refer, which is so imperfect as not to be specifically enforced in equity, and for breach of which nothing but nominal damages can be recovered at law, will not be allowed to oust the courts of jurisdiction, else there must be a failure of justice; or, in other words, courts will not permit their jurisdiction to be ousted by an agreement which, from its defects, is impotent for that purpose; or, in a form still more succinct, the agreement shall not “ oust the court,” because it does not.
But even so nugatory a contract as that is neither contrary to public policy, nor void, for an action may be maintained for its breach, although, for the reasons already stated, the plaintiff can recover only nominal damages. But if the contract be drawn in the “ prudential way ” recommended by Lord Eldon, by inserting a stipulation for liquidated damages ; or there be a separate bond to bind the parties by penalty to its performance, the contract must be fulfilled, or the penalty will be enforced. Would it not be a strange spectacle, however, to witness a court sustaining an action for the penalty of a bond, or for stipulated damages, for the breach of a contract, void as against public policy ?
Nowhere have we been able to find any decision, or even dictum of a court, to sustain the doctrine announced by the court below, on the trial of this cause, that a contract binding the parties to a reference of their controversies was contrary to public policy. On the contrary, the sole ground of the decision on this subject is to be found where, from the lameness and inadequacy of such agreements, the parties have failed to provide any new tribunal of their own choice to supplant the jurisdiction of the courts, or provide for a penalty, or stipulated damages.
In Burchell vs. Marsh, 17 How., Mr. Justice Grier said: “Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either of law or fact. *261 A contrary course would substitute the j udgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation."
For these reasons we think the judgment of the court should be reversed, and a new trial awarded.
Gartter, C. J., dissenting.