ROGERS et al. v. PETRIFIED BONE MINING CO. et al.

(Circuit Court of Appeals, Third Circuit. February 6, 1908.)

No. 4.

1. WRIT OF ERROR—REVIEW—PRESUMPTIONS—VERDICT.

Where, in an action to recover $4,708.42 as the unpaid balance of the price of certain phosphate, defendants claimed a breach of warranty, and, though admitting that they had received the full market price for the phosphate from their vendees, claimed that they had been enabled to do so only by surrendering a claim against such vendees for $5,747, and the jury found for plaintiffs for $4,154.73, it would be assumed that the jury found that defendants had surrendered no valuable claim against their vendees, but that they had realized within $600 of the market price.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3755–3761.]

2. SAME—ADMISSION OF EVIDENCE—PREJUDICE.

Where, in an action for the unpaid part of the price of certain phosphate, defendants pleaded breach of an express warranty of quality, defendants were not prejudiced by the allowance of evidence that the phosphate was not sold by them to their vendees, but was taken by the latter pursuant to the terms of a settlement, the terms of which the answer did not disclose.

[Ed. Note.—For cases in point, see Cent Dig. vol. 3, Appeal and Error, §§ 4153–4160.]

3. WITNESSES—CROSS-EXAMINATION—SCOPE.

Where, in an action for the price of phosphate, defendants claimed a breach of warranty of quality, and a witness testified in chief that the cargo was of "no value," it was proper to show on cross-examination that purchasers from defendants accepted the cargo, and that it was regarded as having value in a settlement between them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 931–948.]

4. SALES—DAMAGES—EVIDENCE—SETTLEMENT.

Where, after the sailing of a vessel with a cargo of phosphate sold by plaintiffs to defendants, it was discovered that the phosphate did not comply with a warranty of quality, but defendants induced their vendees to accept the same, and made a settlement with them therefor, evidence of the settlement was admissible to show the extent of defendants' damage by the breach of warranty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1271–1274.]

5. WRIT OF ERROR—SCOPE OF REVIEW—FEDERAL COURTS—DENIAL OF NEW TRIAL.

Refusal to grant a new trial is not assignable for error in federal courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3864.]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 150 Fed. 445.

John Houston Merrill and John Scott, Jr., for plaintiffs in error.
James Collins Jones, for defendants in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the Petrified Bone Mining Company and two other companies (hereafter styled plaintiffs) jointly brought suit against George H. Rogers and others, doing business as Rogers, Holloway & Co., plaintiffs in error (hereafter styled defendants) to recover $4,708.42, being the unpaid balance on contracts for the sale of phosphate by said companies to said Rogers, Holloway & Co. The phosphate in question was delivered to the latter at Pensacola, Fla.; they paid for it in part, and shipped it by the steamships Euterpe and Aristea to Venice. On analysis, but after she sailed, the cargo of the Euterpe was found to be below the contract warranty. Rogers, Holloway & Co. had sold both cargoes to Marinoni & Co., dealers at Venice, who, as testified by Francisco Marinoni, accepted the entire cargo, and paid for it in part. They refused to pay the balance, alleging the phosphate was below the guarantee of the defendants to them. A written settlement, dated February 3, 1903, was made between Rogers, Holloway & Co. and Marinoni & Co., by which the latter settled for the cargoes of both vessels. In the present suit the defendants not only contested plaintiffs' balance of $4,708.42 sued for but claimed to recover, by reason of damages sustained by breach of warranty, a certified balance of $12,756.09. This balance, as appears from defendants' special plea, which counsel during the trial stated they would stand on, was reached on the basis stated therein, "that the fair market value of the entire shipment, if in accordance with the contract, would have been twenty-five thousand five hundred and twelve and 17/100 dollars ($25,512.17), whereas, in point of fact, the value of the phosphate actually shipped by the plaintiffs by the steamship Euterpe, and being the subject-matter of this suit, was not in excess of the amount of twelve thousand seven hundred and fifty-six and 8/100 dollars, and * * * the defendants have on this account suffered loss and damage to the amount of twelve thousand seven hundred and fifty-six and 8/100 dollars ($12,756.08),

being the difference between the fair market value of the phosphate rock agreed to be furnished by the plaintiffs under the contract in suit." On the trial it appeared that about the time of these transactions there was a considerable fall in the price of phosphate, and it was contended by plaintiffs that defendants had received the full market price of phosphate of the warranted quality when the settlement in question was made. The contention of the parties was thus stated by the court:

"There is other evidence here that, as a matter of fact, this rock was sold by the defendants for eight pence per unit in the market of Venice at that time. The defendants say: 'That is true, but the reason why it was sold at eight pence per unit of phosphate was because we had to give up some other valuable thing, some other valuable claim we had against Marinoni, who paid that amount to us; and, as a matter of fact, that was not the measure of the market value of that inferior rock, because while he was apparently paying us eight pence per unit he was getting from us a very valuable concession, which really was worth to us $5,747—a claim we had against him; and that was the reason why he agreed to pay us eight pence per unit for this inferior article that we claim was actually worth nothing."

Not only was no objection or exception taken to the submission to the jury of the bona fides of this settlement, but such submission was requested by Rogers, Holloway & Co. in their point which the court affirmed, viz.:

"If the jury find that the settlement made by the defendants with their buyer in Venice was made in good faith, was necessary under the circumstances, and that the actual result of it was to minimize the loss and damage suffered by the defendants by reason of plaintiffs' breach of warranty, the defendants are entitled to set off against plaintiffs' claim the amount of loss actually suffered by defendants in such settlement."

The verdict being in favor of the plaintiffs for $4,154.73, it must be assumed the jury found that defendants surrendered no valid claim against Marinoni & Co. in the settlement, and that in such settlement they realized within $600 of the market price, by which sum the verdict reduced the plaintiffs' contract balance of $4,708.42. The first assignment is:

"Because the learned judge erred in admitting the evidence responsive to the following question of counsel for plaintiff and in overruling the objection of counsel for defendant thereto: Q. Your firm, as a matter of fact, did sell the phosphate rock that was shipped to Venice on the steamship Euterpe to Marinoni & Company, did they not? I mean the shipment which we are now discussing. Mr. Scott: I object to that on the ground that where an article has been sold on an express warranty, and there has been, as has been proved here, a breach of that warranty, that evidence is inadmissible to show what we did with the article afterwards. I object to it unless it is limited to the date of November, 1902. (Objection overruled, exception noted for defendant by direction of the court.)"

By it the defendants now seek to convict the court below of error in not excluding all evidence of this settlement. But in point of fact the assignment does not raise the question sought to be raised in brief and argument. The answer of the witness Rogers to the question complained of merely was that the cargo was finally taken by Marinoni, "but was not sold; we made a settlement with them." Such answer did not disclose the terms of the settlement and did the defendants no harm. In point of fact, the invoice, which did embody the settlement,

had been already ruled out by the court, and when it was offered later by the plaintiffs there was no objection or exception by the defendants to its admission. Moreover, the question was clearly proper on cross-examination. The witness had in chief made the broad statement that the cargo was of "no value whatever," which answer it was manifestly proper to contradict or qualify on cross-examination by the fact that the cargo had proven to be of value in the settlement. But it was also admissible on other grounds. The cargo was accepted by Marinoni & Co. and it was not in the power of defendants thereafter to sell it; they alleged, moreover, there was no market or market value for it, and the loss they incurred in this settlement was one way of showing the damage sustained. In view of the pleadings, the position assumed by counsel during the trial, and the fact the defendants could not sell the cargo by reason of its acceptance by Marinoni & Co., we are clear no error was committed in admitting proof of the settlement. Its admission was necessary to an adjustment of the respective rights of the parties. The complaint of the defendant is in reality against the verdict of the jury, and this, by the second assignment, it seeks to set aside. But the authorities—Pomeroy v. Bank of Indiana, 68 U. S. 592, 17 L. Ed. 638; Railway Company v. Heck, 102 U. S. 120, 26 L. Ed. 58; South Penn Oil Company v. Latshaw, 111 Fed. 598, 49 C. C. A. 478— are too overwhelmingly against it to justify a discussion of the principle that refusal to grant a new trial cannot be assigned for error. Accordingly, the judgment of the court below is affirmed.