# Sloan Corporation *v.* Linton et al., Appellants.

*Contracts—Sales—Executed contracts — Failure to perform — Brokers—Undisclosed principal—Examination of goods—Waiver of option—Inability to examine—Measure of damages—Market value —Value at principal market—Act of May 19, 1915, P. L. 543.*

1. Where goods are sold by brokers who make no disclosure of their principal at the time of the making of the contract, they will be personally liable for breach thereof, and cannot escape such liability by subsequently notifying the vendee that the contract would not be performed and that they were acting as agents for a third person to whom the vendee should look for damages.

2. The privilege given to a vendee to examine goods at a point of shipment is not a condition precedent to the contract taking effect; and such privilege may be exercised or waived at the option of the vendee without affecting the validity of the contract. Such an inspection may disclose grounds for rescinding the contract; but in such case it is optional with the vendee whether to rescind or not, and, until rescinded, the contract remains in force.

3. The contention that no recovery may be had for breach of a contract of sale because the privilege of inspecting the goods was not availed of by the vendee is without merit, where it appears that the vendee sent an agent to the point stipulated for making the inspection, and the goods were not there for him to inspect.

4. Where the market value of goods sold is based throughout the country upon the market value in New York City, less the cost of transportation thither, the plaintiff may prove the value of the goods by proving the value in New York City and deducting therefrom the cost of transportation from the points of shipment.

5. Under the Act of May 19, 1915, P. L. 543, Sec. 67, it is an available market to which resort is to be had for a price, with no mention of place of delivery.

6. In an action for breach of a contract for the sale of merchandise, it appeared that defendants, who were brokers, wrote the plaintiff stating "We have sold to you as brokers per contracts turned over to us, cotton linters as follows: Quantity 475 Bales. Quality Clean Mill Run. Price 6.18 f. o. b. cars mills......You have the privilege of examining stock at point of shipment, but shipping instructions to be given to us immediately." It appeared that shipping instructions were promptly given to defendants; and that plaintiff sent its agent to the points of shipment to examine the goods sold, and that the agent could find none and therefore could not make the inspection. Thereafter, defendants notified

plaintiff that they could not deliver the goods sold and stated that they had sold them as brokers on account of a third party; and that their interest in the matter had ceased. Defendants contended (1) that they were not personally liable as they had made the sale as brokers; (2) that as no examination of the goods had been made by plaintiff, the contract was not complete, and no recovery could be had for its breach; (3) that the measure of damages claimed was not the proper measure of damages. There was evidence that the market price of cotton linters throughout the country was based on New York prices. The jury found a verdict for plaintiff for the value of the goods based on New York prices less transportation charges to New York, and judgment was entered on the verdict. *Held,* no error.

Argued Jan. 14, 1918.   Appeal, No. 198, Jan. T., 1917, by defendants, from judgment of C. P. No. 2, Philadelphia Co., Sept. T., 1916, No. 4501, on verdict for plaintiff in case of N. P. Sloan Corporation v. Ross B. Linton and W. Horace Linton, Copartners, trading as Josiah Linton & Co. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Assumpsit for breach of contract for the sale of personal property. Before WESSEL, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $2,300.00 and judgment thereon. Defendants appealed.

*Errors assigned* were rulings of evidence and instructions to the jury.

*Edmund W. Kirby,* of *Morris & Kirby,* for appellants.
—The contract was not completed without inspection: Pennsylvania Lubricating Co. v. Wilhelm, 255 Pa. 390.

The plaintiff is not entitled to recover in the absence of showing the market price or value at the time and place of delivery; or if there is no market price or value at such point, the price at the nearest market to the place of delivery: Canavan v. Neeld, 189 Pa. 208; Willock v. Crescent Oil Co., 184 Pa. 245; Arnold v. Blabon, 147 Pa. 372; Boyd v. Merchants & F. Peanut Co., 25 Pa.

Superior Ct. 199; Reiss v. Myers, 57 Pa. Superior Ct. 243.

*Albert L. Moise,* with him *Paul C. Hamlin,* for appellee.—The contract was executed, not executory: Conrad v. Penna. R. R. Co., 214 Pa. 98.

Plaintiff's evidence on the measure of damages was competent and sufficient: Gordon v. Bowers, 16 Pa. 266; Sutherland on Damages, Fourth Edition (1916), Vol. 2, Section 653, pages 2295-2296; Hazleton Coal Co. v. Buck Mountain Coal Co., 57 Pa. 301; Oak Ridge Coal Co. v. Rogers, 108 Pa. 147; Trustees, Etc., of Kingston v. Lehigh Valley Coal Co., 241 Pa. 469; Wemple et al. v. Stewart et al., 22 Barb. 154.

Defendants having failed to name their principal, became personally liable for breach of their contract: Meyer v. Barker, 6 Binney 228; Youghiogheny Iron & Coal Co. v. Smith, 66 Pa. 340; Quigley v. DeHaas, 82 Pa. 267; Hopkins v. Mehaffey, 11 S. & R. 126.

Opinion by Mr. Justice Potter, March 18, 1918:

The N. P. Sloan Corporation brought this action of assumpsit to recover damages from the firm of Josiah Linton & Co. for the breach of a contract for the sale of cotton linters. Plaintiff's claim was based upon a letter dated October 25, 1916, from defendants to plaintiff, in which they stated that "we have sold to you as brokers per contracts turned over to us, cotton linters as follows: Quantity 475 Bales. Quality Clean Mill Run. Price 6.18 f. o. b. cars mills." It was further stated that the linters sold consisted of 250 bales at Columbia, S. C., and 225 bales at Cheraw, S. C. The letter contained the following clause: "You have the privilege of examining stock at point of shipment, but shipping instructions to be given to us immediately." The record shows that shipping instructions were promptly given to defendants, and plaintiff sent its agent to Columbia and Cheraw, S. C., to examine the

goods sold, but none could be found at either place, and, therefore, he could make no inspection. On November 1, 1916, defendants notified plaintiff that they could not deliver the goods sold, and stated that they had sold them as brokers, on account of the Corey-Bickmore Corporation of New York, and that their interest in the matter had ceased. In plaintiff's statement damages were claimed on the basis of the difference between the contract price, and the market value of cotton linters on November 1st, the date of the breach, at New York, less the cost of transportation from Columbia and Cheraw, S. C., to that city. At the trial, defendants contended, (1) that, having made the sale as brokers, they were not personally liable upon the contract; (2) that, as no examination of the goods had been made by plaintiff, the contract was not complete, and no recovery could be had for its breach; and (3) that the measure of damages set up in the statement was not the true measure under the law. There was a verdict for plaintiff and, from the judgment entered thereon, defendants have appealed.

As to the first point, it appears that plaintiff showed, by uncontradicted evidence, that defendants made no disclosure of their principal until some days after the contract was made, and not until they notified plaintiff that the contract would not be performed. Beyond question, therefore, defendants could not escape liability upon that ground.

Their counsel contend further that the clause giving plaintiff the privilege of examining the goods at point of shipment was a condition precedent to the contract taking effect and that, as no such examination was made, it was not consummated and never became effective. The evidence shows that plaintiff attempted an examination, but its agent was unable to find the goods, and they were not produced for his inspection. But, aside from that, the language of the letter of October 25, 1916, does not make such an examination a condition of the contract. It gives the purchaser the privilege only, of inspection

at point of shipment. Of course, such privilege might be exercised or waived at the option of the person to whom it was extended, without affecting the validity of the contract. An inspection might have disclosed grounds for rescinding the contract, but it would have been optional with the purchaser whether he would rescind or not. Until rescinded, the contract would remain in force. To sustain their position on this question, counsel for appellants rely upon Penna. Lubricating Co. v. Wilhelm, 255 Pa. 390. In that case the acceptance of the vendor's offer contained the following clause: "The above subject to approval of sample drawn from bulk, when submitted." It was held that the contract was not complete until the sample had been submitted and approved. Our Brother WALLING said (p. 392) : "The contract was lacking in one essential particular, the minds of the parties had not met on the quality of the commodity, as that was to be determined by sample thereafter to be submitted for plaintiff's approval. Until such approval there was no completed agreement. Should plaintiff disapprove the sample drawn from bulk there would be no sale." It was there further said (p. 393) : "This is not the case of a sale of property subject to the buyer's inspection when delivered, if so the contract would be valid : Conrad v. Penna. R. R. Co., 214 Pa. 98. Nor is it an agreement that the article sold should be satisfactory to the buyer; but it is an agreement that, as part of the sale and in advance of the delivery of the commodity, its quality shall be determined by the purchaser's approval of the sample. Certainly defendant could not compel plaintiff to accept the grease without its previous approval of the sample thereof."

The present case is, however, distinctly that of a sale of property subject to the buyer's inspection when delivered, and, therefore, the contract was valid and complete. It did not require the purchaser's approval of the

goods delivered, in order to make it binding upon the parties.

The case of Conrad v. Penna. R. R. Co., 214 Pa. 98, cited in Mr. Justice WALLING'S opinion and by appellee here, arose out of a contract for the purchase of steel rails, conditioned upon an inspection by the vendee. Mr. Justice MESTREZAT said (p. 102) : "An executed contract for the sale of a chattel vests the title at once, but an executory contract always leaves something to be done before the title to the property will vest in the purchaser. When, however, the act is performed, the sale is complete and the title to the property passes. And in cases like the present, where personal property of a certain description is purchased but not identified or selected from a mass of like property of the vendor, the contract is executory and incomplete and the title to it remains in the vendor. As soon, however, as the purchaser makes a selection of a particular part of the property in pursuance of his contract and his act is approved by the vendor, the sale is complete and the title of the vendor is divested." In the case now before us, a specified number of bales of cotton linters, of a designated quality and manufacture, were sold, and neither inspection nor selection, was a condition of the contract. The purchaser was merely given the "privilege" of examination at the place of delivery. The contract was fully executed, except as to the delivery of and payment for the goods.

Upon the trial, both parties agreed that the damages in such a case are to be measured by the difference between the contract price, and the market value, at the date of the breach. But they differed as to the method of ascertaining that value. Plaintiff proved the market value at the place of delivery, by showing the market value in New York City, and deducting therefrom the cost of transportation from the places of shipment. Counsel for appellants contend that this method was erroneous. The general rule is stated in 35 Cyc. L. & Pr.

633, as follows: "Where the breach consists in the failure of the seller to deliver the goods, the measure of damages is ordinarily the difference between the contract price and the market price of the goods at the time and place of delivery, provided there is a market price for goods of the character and quality contracted for by the buyer at such time and place, and interest thereon from the time of the breach." And on p. 638, it is said: "The market price must be determined as of the place of delivery, provided the goods have a market price at such place. If there is no market price at the place of delivery, the true value is to be shown by the best evidence possible, and in such cases the market value at other places, plus the expense of transportation to the place of delivery, may be used as a basis for computation; and if the market price in the vicinity of the place of delivery is shown to depend on the market price at a large, well-known and active market, the market price at such place plus transportation charges may be considered. If the place of delivery and place of destination are different, the market price at the destination less the cost of transportation may be resorted to." Here there was testimony tending to show that the market price of cotton linters throughout the country is based on New York prices, that being the largest and most active market for that class of goods. There was also testimony from which the jury were justified in finding that the market value at Columbia and Cheraw, S. C., was based upon the market price in New York, being determined by the cost of transportation to that point.

Under the Sales Act of May 19, 1915, P. L. 543, Sec. 67, referring to the measure of damages where the seller has wrongfully refused to deliver the goods, it is provided: "Third, Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of

the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver." It will be noted that it is an "available market" to which resort is to be had for a price, and no mention of the place of delivery is made in that connection in the act.

We find no merit in any of the assignments of error in which complaint is made of the rulings of the learned trial judge upon the admission of testimony as to the market value of the goods. Nor is there any substance in the specifications alleging error in the charge to the jury. It was clear, explicit and adequate, and the answers to the points submitted were entirely correct.

The judgment is affirmed.