Henry Epstein, J.
Plaintiff seeks to recover the purchase price of yard goods and the added cost of transportation, insurance, brokerage, customs charges, with interest from December 16,1953. Jury trial was waived as were findings and conclusions. The total recovery sought is $15,162, plaintiff having waived the storage charges of $2,112 because of inadequate proof of that item. Plaintiff is a corporation in New York which acts as purchasing agent for M. & J. Alhadeff, M. Alhadeff, Successor, of Leopoldville, Belgian Congo, Africa. On July 22, 1953 defendant offered plaintiff sale of broadcloth and oxford in pastel colors, with 2 to 3% “ Twills ” at 80 cents per pound. Plaintiff countered with an offer to purchase “ cotton broadcloth, oxfords * * * pastel colors, no red color * * * clean goods ” at 76 cents per pound. This offer, dated July 31, 1953, referred to defendant’s offer of July 22, 1953. The terms were 1% 10 days (discount allowed) and “ Delivery Required: August 1953, F. A. S. New York.” This was accepted by defendant and, packed for export, the inspection was understandably to await arrival in Leopoldville, Belgian Congo, Africa. Defendant had dealt with plaintiff and plaintiff’s African principal for some 10 years or more and there had been no troubles in the past transactions. Defendant knew the consignee was to manufacture shirts or sell the broadcloth and oxford cloth for such use.
Shipments were made as follows:
5 bales, 1,791 lbs. via S. S. Vinkt — 'August 10, 1953.
5 bales, 1,767 lbs. via S. S. Vinkt — September 9, 1953.
22 bales, 6,426 lbs. via S. S. Steenstraete — September 30,1953.
These shipments arrived in Leopoldville respectively on November 3, November 8, and November 24, 1953. The merchandise was paid for as required by the invoices with checks for $1,347.55 on August 8, 1953; for $1,329.41 on September 17, 1953; and for $5,676.21 on October 9,1953. Total payments made equalled $8,353.25. On September 9, 1953 the consignee wrote complaining that the first shipment contained “95% Twills ”, wholly unsuitable and that an official report would be forthcoming. Final inspection of the goods showed 6,485 pounds of Twills and 3,499 pounds of poplins and a mixture of other goods not ordered. A careful analysis and sampling of the goods was then made by Lloyd’s agent in Leopoldville and the results as above indicated were sent to defendant. On December 16, 1953 defendant was advised that the goods were being stored and held for defendant’s disposition and asking for a return of plaintiff’s payment and the added costs, a total of $11,400.
*745 Defendant then began a long chain of delaying tactics, seeking to have plaintiff and its African counterpart dispose of the goods, varying offers of an allowance to the plaintiff purchaser. The Lloyd’s survey was received by defendant on January 27, 1954, when it arrived in New York. Repeated begging requests for adjustment were refused by the plaintiff and its consignee in Africa because the merchandise was unfitted for the purposes of plaintiff, its African counterpart, and did not conform to the ordered goods. More than 60% of the entire shipment was “ Twills ”, whereas the offer expressly allowed only 2 to 3%. Plaintiff forwarded to defendant samples of the 32 bales of merchandise as proof and defendant in response on March 2, 1954 again tried to get plaintiff to accept an “ allowance ”. Over a long period of time defendant pleaded and sought to have plaintiff “adjust” the matter and offered added allowances. Never during this lengthy exchange of correspondence did defendant assert that the shipment conformed to the contract. Only when the matter reached the stage of actual litigation did defendant take the position posed at this trial, that the merchandise shipped was as ordered. Defendant’s claim that the merchandise could be sold without loss and that it was worth more than the contract price is at odds with defendant’s action or failure to act. Asked to have a representative make an inspection of the goods at the destination, defendant a year later wrote (September 13, 1954): “ We took it up with the man in the Congo and it looks like he must be a very good friend to Mr. Alhadeff and he doesn’t want to interfere with it.” Again defendant offered an allowance to induce plaintiff to take the goods. But defendant never inspected the goods and plaintiff consistently refused to accept the merchandise. The proof is convincing for plaintiff and the pleadings were amended to conform to the proof at the trial.
Appraisal of the witnesses by the court gives entire credibility to plaintiff’s case and absence of such credence in defendant’s witnesses. Two of defendant’s witnesses furnish added support to plaintiff’s case. A textile consultant, Louis Cantor, called by defendant, gave evidence of a price level for broadcloths and oxfords of from 80 to 90 cents a pound with a possible drop of from 10 to 12% from July to December, 1953. The price contracted for and paid by plaintiff, 76 cents per pound, meets the basis for this anticipated market drop in the months in question. The son of defendant, employed by defendant, made out the invoices from the order sheet and not once did he invoice any “Twills” or other goods than the “ broadcloth ” and “ oxfords ”. He could offer no récords to show any “ pounds ” *746 of “Twills” shipped to plaintiff’s consignee in Leopoldville, Africa. The testimony of the other witnesses for defendant — defendant himself and two employees — is wholly unacceptable and these witnesses did not testify truthfully.
The motion of defendant to dismiss the complaint on the basis of subdivision 3 of section 150 of the Personal Property Law is denied. The lapse of time between the receipt of the goods and the notification of their failure to conform to the contract was not only not unreasonable — it met every reasonable measure of time, considering the spacing of the shipments by defendant which did not meet the terms of the order itself. Nor does the claim that the plaintiff is not the proper party injured hold water. This is based on the claim of an “ undisclosed principal ”, Yet it is undisputed by defendant’s own evidence that the Leopoldville principal was known and had been disclosed as the intended recipient of the goods ordered and shipped. These factual issues are determined in plaintiff’s favor.
The eases are clear in support of plaintiff’s position on the facts disclosed:
“ The general rule is that if the seller is to ship the goods, the place of inspection, in the absence of an agreement to the contrary, is the destination of the goods (Williston on Sales, § 480) ” (Anderson Trading Co. v. Brody, 193 App. Div. 681, 685).
“ The complaint, narrowed down, alleges a contract of sale, a breach of warranty, damages resulting from the breach, and demands judgment for a sum of money which is apparently the purchase price, and also damages for other losses * * * These items, if within the contemplation of the parties might be recovered in an action for damages resulting from a breach of warranty”. (Sorenson v. Keesey Hosiery Co., 244 N. Y. 73, 79-80.)
(See, also: Personal Property Law, §§ 131, 150; Portable Mach. Co. v. Krakawka, 141 Misc. 123; Czarnikow-Rionda Co. v. Federal Sugar Refining Co., 230 App. Div. 206.)
Prior satisfactory dealings between the litigants cannot relieve defendant of the damages flowing from his flagrant breach of contract. Defendant perhaps was not alert to the awakening of the Belgian Congo in the past decade to standards of commercial integrity. It must now pay for what it has caused plaintiff to suffer. Judgment awarded to plaintiff in the sum of $15,162, with costs.