RUBEWA PRODUCTS CO., Inc., a corporation, Appellant,

v.

WATSON'S QUALITY TURKEY PRODUCTS, INC., a corporation, Appellee.

WATSON'S QUALITY TURKEY PRODUCTS, INC., a corporation, Appellant,

v.

RUBEWA PRODUCTS CO., Inc., a corporation, Appellee.

Nos. 3968, 3969.

District of Columbia Court of Appeals.

Argued Oct. 30, 1967.

Decided May 29, 1968.

610

Malcolm W. Houston, Washington, D. C., for appellant in No. 3968 and for appellee in No. 3969.

Maxwell A. Howell, Washington, D. C., for appellee in No. 3968 and for appellant in No. 3969.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge:

Rubewa Products Co., Inc., an international broker in poultry products, sued Watson's Quality Turkey Products, Inc., a poultry producer, for breach of a contract to sell and deliver unseasoned turkey hindquarters, claiming damages in the sum of $3,558.33. The complaint alleged that Watson's delivered to Rubewa poultry which was seasoned, not fully prepared for cooking, rancid and discolored, all in violation of the terms of the contract. At the same time Rubewa attached before judgment certain credits and property of Watson's in the hands of several customers in the District of Columbia.

Watson's entered its appearance, denied the specific allegations of the complaint, and counterclaimed for damages to its business reputation resulting from an alleged breach by Rubewa of the compulsory arbitration provision of the contract by bringing suit and filing the attachments before judgment. Rubewa filed an "Answer to Counterclaim", realleging the matters set forth in the original complaint as well as asserting that some of the cartons containing the poultry were mismarked. Rubewa also pleaded a counterclaim to Watson's counterclaim, seeking damages in the sum of $50,000 for loss of business resulting from the original breach of contract, to which Watson's replied with a general denial and a plea of lack of jurisdiction.

Rubewa, a District of Columbia corporation, is a broker in the business of buying poultry products from United States producers for resale to European buyers, making a small margin of profit on the difference between what it pays the domestic sellers and what it receives from the foreign buyers. Watson's, a New Jersey corporation, produces and sells poultry products. In October of 1963, Rubewa obtained an order from Ferdinand L. Friedrich Company of Hamburg, Germany, for approximately 30,000 pounds of unseasoned turkey hindquarters, to be supplied in cartons marked "FLF-HBG" on the short side of the cartons, for a net price of $8,955.28, after payment of freight, dockage and insurance charges. Rubewa then entered into a contract with Watson's to purchase approximately 30,000 pounds of unseasoned, fresh frozen turkey hindquarters for the price of $8,455.06, providing a profit to Rubewa of $500.22.[1] It was specified in the contract that Watson's was to deliver the hindquarters to the shipping line designated by Rubewa at Philadelphia, Pa.

The hindquarters were delivered to Philadelphia and shipped to Germany. After the goods arrived in Hamburg, Rubewa was advised that the cartons were mismarked, the designated marks being displayed alongside of the name of a competitor of the Friedrich Company in Hamburg, and further, that the cartons bore the legend that the hindquarters were seasoned with salt, pepper, glutamate and herbs. Upon inspection by the Controll Co., a surveillance company hired by Rubewa, it was reported that the cartons were mismarked; that the hindquarters were seasoned at least to the extent of being salted, and that they were sporadically and partially rancid. Because of the "marks", the seasoning and the rancidity, Friedrich refused to accept the shipment of poultry.

Watson's was notified of Friedrich's refusal to accept the shipment and of its demand of Rubewa to repay the purchase price. A copy of the Controll Co. report was sent to Watson's. After a series of negotiations, during which Watson's offered to take the shipment back but refused to pay the return freight, the poultry was eventually sold in Germany at a claimed loss of $3,183.37. Rubewa's suit is for this sum plus additional costs of $374.96.

The trial court found that some of the turkey was to some extent rancid at the

1. The statement of proceedings and evidence lists this figure as $510.22, but this appears to be a mathematical error.

time it was inspected in Hamburg, but that no conclusion could be reached as to when it became rancid, or as to what caused the rancidity. It found that Watson's had exercised reasonable care and had used all customary techniques developed by the trade to protect the wholesomeness of the shipment up to the time of the delivery to the carrier, and concluded that Watson's could not be held liable for any spoilage of the turkey. The court also found that the markings on the cartons were material to their value at delivery and that some of the cartons were not marked as required by the contract or in accordance with the codes used by and known to those familar in this trade. It further found that some of the shipment was composed of and was marked as seasoned turkey, which had a market value in Germany at the time somewhat less than unseasoned turkey. The court concluded that these deficiencies in the shipment were readily apparent at the time of delivery at the dock in Philadelphia to the carrier of Rubewa; that in the exercise of reasonable prudence Rubewa should have inspected the shipment and either rejected it or reconciled the deficiency at that time, and that Watson's could not be assessed liability for costs that were incurred or that accrued thereafter. Damages were assessed on the basis of the difference between the value of the shipment as contracted for at dockside and as actually delivered at dockside. They were found to be $600.

In these cross-appeals from the judgment of the trial court appellant and cross-appellee Rubewa asserts error in the dismissal of its counterclaim to a counterclaim and in the amount of damages awarded. Appellee and cross-appellant Watson's claims it was error for the court to find for Rubewa on its original claim and on Watson's counterclaim; to admit certain interrogatories into evidence, and to allow interest to run on the judgment.

■ The trial judge was correct in dismissing Rubewa's counterclaim to a counterclaim. Such a pleading is permissible in a proper case,[2] but here Rubewa merely pleaded in its counterclaim an additional element of damages arising out of the same breach of contract alleged in the original complaint. The counterclaim was not responsive to Watson's counterclaim for breach of the arbitration clause of the contract, nor did it set up a claim against Watson's which was separate and distinct from the original alleged breach of contract. In effect, Rubewa attempted to split its cause of action and to recover damages for breach of contract in excess of the jurisdiction of this court.[3] We have said previously that this cannot be done, Le John Mfg. Co. v. Webb, D.C.Mun.App., 91 A.2d 332 (1952); Astor Pictures Corp. v. Shull, D.C.Mun.App., 64 A.2d 160 (1949), and for this reason hold that the counterclaim to the counterclaim was properly dismissed. The denial of Rubewa's motion to amend the complaint to incorporate the allegations of its counterclaim, made at the close of all of the evidence, was within the sound discretion of the court and we find no abuse of that discretion.[4]

2. Ivey v. Daus, 17 F.R.D. 319 (S.D.N.Y. 1955); Maison De Marchands, etc. v. New York Silicate B.S. Co., 13 F.R.D. 15 (S.D.N.Y.1952); Mid-States Products Co. v. Commodity Credit Corp., 10 F.R.D. 592 (E.D.Ill.1949), aff'd, 196 F.2d 416 (7th Cir. 1952); Bethlehem Fabricators, Inc. v. John Bowen Co., 1 F.R.D. 274 (D.Mass.1940); Warren v. Indian Refining Co., 30 F.Supp. 281 (N.D.Ind.1939). See also Downey v. Palmer, 31 F.Supp. 83 (S.D.N.Y.1939).

3. Rubewa admits that the action was not filed in the United States District Court for the District of Columbia, with the claim for loss of prospective profits included in the complaint, because of the high premium for an attachment bond.

4. The allegation in the counterclaim that the cartons were mismarked was properly considered by the court since we find this issue was tried with the express or implied consent of the parties.

On Watson's counterclaim for breach of the agreement to arbitrate [5] the testimony was that the food business is highly competitive and especially vulnerable to charges of breach of contract for rancidness. Disputes are therefore normally resolved by arbitration in order to avoid the publicity of law suits, and if Rubewa had followed the contract procedure, most of the unfavorable publicity in the industry which followed the filing of this suit and the attachments before judgment, as well as the expense and inconvenience of trial, including attorney's fees, would have been avoided. At this point the court sustained an objection to further interrogation on the issue of damages for the stated reasons that attorney's fees could not be awarded to the prevailing party in this action and that that portion of the counterclaim which sounded in tort was premature because no claim existed for wrongful attachment until Watson's prevailed at trial. Watson's counsel insisted that the counterclaim was an action in contract, not one in tort, and that attorney's fees were sought as an expense resulting from Rubewa's breach of the arbitration clause of the contract, not as court costs. Watson's was nevertheless precluded from presenting any evidence of damage on the counterclaim and a trial finding for Rubewa was made thereon at the conclusion of Watson's case.

■ While the counterclaim is somewhat ambiguous, we accept Watson's disclaimer that it spelled out an action in tort.[6] Conceding therefore that Watson's alleged a

breach of contract, the only testimony on this issue was that Rubewa failed to seek arbitration before filing suit. It does not follow, however, that the court erred in precluding Watson's from presenting evidence of damage to its business reputation or of the amount of attorney's fees occasioned by this suit. Watson's did not seek a statutory remedy by invoking the Federal Arbitration Act, 9 U.S.C. § 1 et seq.,[7] to enforce arbitration, and by answering the complaint on the merits and counterclaiming for damages, acts inconsistent with the right to arbitrate, waived enforcement of arbitration. Cornell & Company, Inc. v. Barber & Ross Company, 123 U.S.App.D.C. 378, 379, 360 F.2d 512 (1966). Cf. McKeeby v. Arthur, 7 N.J. 174, 81 A.2d 1 (1951). On the contrary, Watson's position was that the damage was done when the suit and the attachments were filed, so that its only remedy was to seek damages for breach of the agreement to arbitrate.

■ At common law the breach of an executory agreement to arbitrate will support an action for damages, Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582 (1924), but only nominal damages can be recovered for the breach. Aktieselskabet Korn etc. v. Rederiaktiebolaget, etc., 250 F. 935, 937 (2d Cir.1918), aff'd, 252 U.S. 313, 40 S.Ct. 332, 64 L.Ed. 586 (1920); Munson v. Straits of Dover S.S. Co., 102 F. 926, 928 (2d Cir. 1900); Electrical Research Products, Inc. v. Vitaphone Corp., 20 Del.Ch. 417, 441, 171 A. 738, 748 (1934); cf. Campbell v. Ameri-

5. "Revised American Foreign Trade Definitions 1941. All disputes arising in connection with the present contracts be finally settled by arbitration. The arbitration shall be held at Washington, D. C., and conducted in accordance with the Rules of the American Arbitration Association. Judgment upon the award rendered may be entered in any Court having jurisdiction or application may be made to such for all judicial acceptance of the award and an order of enforcement, as the case may be."

6. This is consonant with the action of the trial judge for if he believed that the

counterclaim was an action for wrongful attachment and was premature, the counterclaim would have been dismissed.

7. We have held, at least by implication, that the Act applies to the District of Columbia Court of General Sessions. Coles v. Redskin Realty Co., D.C.Mun.App., 184 A.2d 923, 926–927 (1962); cf. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, writ of cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

can Popular Life Insurance Co., 8 D.C. (1 MacArth.) 246 (1873). More specifically, expenses incidental to a trial cannot be recovered. Munson v. Straits of Dover S.S. Co., supra. Under these circumstances, therefore, where on a finding for Watson's on its counterclaim only nominal damages could have been awarded, we find no reversible error. Cf. Lee v. Dunbar, D.C. Mun.App., 37 A.2d 178 (1944).

■ ■ The trial court, over objection, permitted Rubewa to introduce into evidence the deposition of Ferdinand L. Friedrich and portions of the deposition of Klaus Busch of the Controll Co., taken in Germany upon written interrogatories. Watson's first interposed a number of general formal objections to the admission of both sets of interrogatories which we hold had been waived.[8] Specific objections were made to the admission of certain of the Busch interrogatories on the grounds of hearsay, lack of competency, and the fact that the answers were received the day prior to trial. The purpose of these interrogatories was to establish the authenticity of and to introduce the Controll Co.'s inspection report, a copy of which had previously been sent to Watson's. The witness was identified as an employee and official expert with Controll Co. and the inspection was made in his presence by one Theodore Bohle, a poultry expert. In our opinion the witness was competent to establish the authenticity and trustworthiness of the report, made in the regular course of business, and although the answers were not filed until the day of trial, we find no error since Watson's made no request for a continuance nor any showing of prejudice. The objection to certain of the Friedrich interrogatories was also on the grounds of hearsay, lack of foundation, and lack of

competency. Again we believe the competency of the witness to testify as to facts within his knowledge and as to his opinion was established, and any error in admitting those portions of the answers which could be called hearsay was harmless since they were merely repetitive of the testimony of Mr. Dunzinger, managing partner of the Friedrich Company, who personally inspected the goods on arrival and who was present when they were inspected by Controll Co.

■ Finally,[9] we hold there is sufficient evidence in the record to support the court's finding of liability, but none to support the finding of $600 damages. Clearly Rubewa's suit was based on the theory of warranty, the principal claim being that the hindquarters were seasoned and rancid.[10] The court was unable to fault Watson's on the issue of rancidity, but it did find that the hindquarters were seasoned to some extent and the cartons were mismarked, both defects material to the value of the shipment. In its application of the general rule, assessing damages as the difference between the value of the goods as contracted for and their value as actually delivered, the court arrived at a figure of $600.00. Recovery for costs incurred beyond the point of delivery, specified in the contract as Philadelphia, was denied on the ground that the defects should have been discovered and an adjustment made at that time. This we think was error.

■ In Meyers v. Antone, D.C.App., 227 A.2d 56, 58 (1967), we stated:[11]

The general rule of damages for a breach of warranty has been variously stated. In Fries, Beall & Sharp Co. v. Livingstone, 56 App.D.C. 209, 12 F.2d 150 (1926), the court recognized that damag-

---

8. District of Columbia Court of General Sessions Civil Rule 32.

9. The claim that interest should not run on the judgment is without merit.

10. Neither Rubewa, because it prevailed on other issues, nor Watson's because it be-

lieves the court was correct, complains of the finding on the issue of rancidity.

11. The law of New Jersey, where the contract was made, and of the District of Columbia, where suit was filed, is the same.

es were ordinarily measured by the difference between the actual value of the article sold and what it would have been worth had it been as warranted. It further stated that under a breach of contract, whether of warranty or otherwise, the defendant was liable for those damages which were the natural consequence and proximate result of his conduct. The applicable Code provisions contain similar standards and further provide that special circumstances may permit a showing of proximate damages of a greater amount. D.C.Code § 28–1507(6) and (7) (1961); compare D.C.Code § 28:2–714(2) (Supp. V, 1966).

And the applicable code provisions referred to, D.C.Code 1961, § 28–1507, provide that:

(6) The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty.

(7) In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty.

■■ The court awarded damages based upon a finding that Rubewa had a duty, which it failed to meet, to inspect the goods in Philadelphia. Such a finding is ambiguous and without any indication of why it is relevant to the facts of this case. While the Uniform Sales Act, in effect at the time, gave the buyer the right to inspect the goods prior to acceptance, D.C.Code 1961, § 28–1307, it also provided that absent an express or implied agreement of the parties, acceptance of the goods by the buyer would not discharge the seller from

liability in damages or other legal remedy if the buyer gave timely notice of the breach, D.C.Code 1961, § 28–1309. The court of course was not saying that the defects, which it found to exist, were waived because of untimely notice. In that event it would not have found for Rubewa at all. Nor was it limiting damages to loss of profits because of a failure to inspect, since the damages awarded exceed that amount. The court obviously felt that if Rubewa had inspected the shipment at Philadelphia it could have mitigated damages by rescinding the contract and demanding the return of the purchase price. But rescission is not the buyer's only remedy.[12] He may also affirm the contract and seek damages for its breach. Significantly, the instant contract did not provide for inspection upon delivery, nor was there any evidence that the parties contemplated an inspection by Rubewa upon delivery. All of these circumstances persuade us that it was error to hold that the place of inspection was the point of delivery rather than the destination. Freier v. Shayani, 16 Misc. 2d 31, 183 N.Y.S.2d 198 (1958), aff'd, 19 Misc.2d 297, 194 N.Y.S.2d 613 (1959); Baker v. J. C. Watson Co., 64 Idaho 573, 134 P.2d 613 (1943); Joannes Bros. Co. v. Czarnikow-Rionda Co., 121 Misc. 474, 201 N.Y.S. 409 (Sup.Ct.1923), aff'd, 209 App. Div. 868, 205 N.Y.S. 930 (1924).

The real difficulty in this case is that by the testimony of all parties there is no market for turkey hindquarters in the United States. They are prepared on special order for shipment to Western Europe and Watson's, who did a very large export business, not only knew that the hindquarters were for resale in Germany, but knew and understood the need for exact "marks". Given these special circumstances, and irrespective of the place of inspection, the only available evidence of value at the time

---

12. See American Paper & Pulp Co. v. Denenberg, 132 F.Supp. 802 (E.D.Pa.1955), modified, 233 F.2d 610 (3d Cir. 1956), where in a very similar case the trial court's award of damages for breach of contract was modified on appeal to base the award of damages upon a rescission.

of delivery was the price for which the hindquarters could be resold in Germany.[13]

■ In the few cases which could serve as guidelines here the courts have measured damages in varying ways,[14] but all have attempted to approximate the actual loss suffered as a result of the breach of contract. A like approach is appropriate here. In our opinion the proper measure of damages in this case is the loss directly and naturally resulting in the ordinary course of events from the breach,[15] and while we would ordinarily recompute the damages from the evidence of record, we believe that further testimony is required, *inter alia*, as to the series of negotiations and agreements after discovery of the defects, the value of the German currency in dollars at the time of the breach, and the reason for the apparent delay in eventually disposing of all of the hindquarters. Accordingly, we remand for a new trial on the issue of damages only.

So ordered.

13. There is some authority to the effect that if there is no market at the place of delivery, damages are measured by the price at the nearest available market, less transportation. Sundt v. Tobin Quarries, Inc., 50 N.M. 254, 175 P.2d 684, 169 A. L.R. 586 (1946); N. P. Sloan Corp. v. Linton, 260 Pa. 569, 103 A. 1011, 6 A. L.R. 633 (1918); 78 C.J.S. Sales § 546c (1952).

14. See e. g. American Paper & Pulp Co. v. Denenberg, supra note 12; Muraka v. Bachrack Bros., 215 F.2d 547 (2d Cir. 1954); Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 147 F.2d 399 (2d Cir.), cert. denied, 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982 (1945);

Parrott v. Allison, 145 F.2d 415 (2d Cir. 1944); Rogers v. Petrified Bone Mining Co., 158 F. 799 (3d Cir. 1908); In re Gotham Silver Co., 91 F.Supp. 520 (S.D. N.Y.1950); Boyce v. Fowler, 87 F.Supp. 796 (D.Mass.1949); Merco, Inc. v. Schranze, 21 Misc.2d 743, 192 N.Y.S. 2d 285 (Sup.Ct.1959), modified, 12 A.D. 2d 476, 210 N.Y.S.2d 479 (App.Div. 1960); Freier v. Shayani, 16 Misc.2d 31, 183 N.Y.S.2d 198 (1958), aff'd, 209 App. Div. 868, 194 N.Y.S.2d 613 (1959).

15. A like result would be reached by showing the difference in value at delivery and value as warranted, plus damages occasioned by the special circumstances of this case.