**William L. BRANDON, Appellant,**

v.

**William J. HINES, Appellee.**

**No. 79–1174.**

District of Columbia Court of Appeals.

Argued Oct. 30, 1980.

Decided Dec. 21, 1981.

James E. Burk, Washington, D. C., for appellant.

Arthur G. House, Bethesda, Md., for appellee.

Before NEWMAN, Chief Judge, and MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellant, a building contractor, sued for breach of a construction contract to renovate appellee's premises. The contract contained an arbitration clause. The trial court stayed the litigation pending arbitration, and the arbitrators ultimately rendered an award in appellant's favor. The trial court, however, denied appellant's motion to confirm the award as a judgment, vacated the award on the ground that the arbitration panel had decided the case out of time, and directed the parties to trial.

This case presents two questions of first impression for this court. The first is whether the trial court's order denying the motion to confirm the arbitration award, vacating the award, and directing the parties to trial is an appealable order. We hold that the order is an appealable interlocutory

order "dissolving" an "injunction[ ]" under D.C.Code 1973, § 11–721(a)(2)(A).

The second question is whether the trial court erred in vacating the award as untimely. We hold that when, as here, the court authorizes arbitration to proceed by "rule of court," each party's consent to a reasonable extension of time for rendering the award is presumed, unless a party promptly files a motion with the court objecting to continuation of the arbitrators' deliberations. Because appellee failed to inform the court of his challenge to the arbitrators' authority, and the arbitrators' two-week delay in rendering the award was reasonable, we reverse and remand the case for entry of judgment on the award.

## I.

On July 1, 1975, appellant, William L. Brandon, and appellee, William J. Hines, entered into a written agreement for Brandon to renovate Hines' townhouse at 1905 S Street, N.W. The contract contained an arbitration clause:

### ARTICLE XI

### Arbitration

11.1 All claims, disputes and other matters in question between parties to this Agreement arising out of or relating to this Agreement or the breach thereof, shall be decided by arbitration. Each party shall designate an arbitrator; and the two designated arbitrators shall in turn designate a third arbitrator. Rules of arbitration shall be prescribed by the Construction Industry Arbitration Rules of the American Arbitration Association.

11.2 Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement. The demand shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

11.3 The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

In early October, 1976, Brandon submitted a final bill to Hines covering both the work specified in the contract and additional items requested during construction. Hines refused to pay, claiming that the work was unsatisfactory and that the bill listed as extras various items included in the basic contract.

On January 11, 1977, Brandon's attorney wrote to Hines, stating that Brandon "will be willing to undertake to arbitrate the construction contract dispute" and requesting that Hines "give formal notice of demand for arbitration in writing within the next five working days . . . ." The letter concluded:

If we do not receive your notice of demand for arbitration within five working days of the date of this letter, we will assume that you have chosen not to initiate arbitration and we will promptly initiate a civil lawsuit to determine the rights of the parties in this controversy.

On January 17 Hines replied that "it may be a little premature for arbitration in that . . . [i]t would be difficult to ascertain my damages at this time." Hines stated that he "would prefer to discuss a settlement without resorting either to arbitration or the courts. However, if action beyond negotiation is necessary, the courts may be the best way to do it."

Brandon filed suit on February 7, 1977, seeking money damages for breach of contract, payment for goods delivered to Hines, and enforcement of a mechanic's lien. On April 14, Hines served a motion to dismiss the complaint on the ground that the parties had agreed to arbitrate all disputes arising from the contract. Brandon opposed the motion on the grounds that Hines had waived his right to arbitrate and that, in any event, the court should not dismiss but merely stay the proceedings. On July 5, 1977, the trial court denied the motion to

dismiss and ordered "that this case be stayed pending arbitration to be initiated within 30 days." Neither party appealed this order.

Brandon initiated the arbitration proceeding two weeks later by sending to Hines and filing with the American Arbitration Association (AAA) a demand for arbitration seeking the recovery requested by the complaint as well as costs and attorney's fees. By the end of November, a panel of three arbitrators had been chosen: Brandon and Hines each designated one arbitrator, and the two party-appointed arbitrators chose a third panel member.

On January 18, 1978, Hines moved to set aside the stay of litigation pending arbitration on the ground that Brandon was an unlicensed contractor, and the Home Improvement Licensing Regulations, 5Y DCRR § 2.1 (1970), therefore, rendered the contract (including the arbitration clause) void and unenforceable. Brandon opposed the motion on the ground that the Home Improvement Licensing Regulations did not apply, and that even if they did, the question of the validity of the contract was one for the arbitrators. At the court's suggestion, the first arbitration hearing, set for January 27, was postponed. The court ultimately denied the motion to set aside the stay.

The arbitration panel held hearings on March 30, April 6, and April 26, 1978. The parties filed over 250 pages of exhibits and pre- and post-hearing briefs. In accordance with AAA rules, the AAA declared the hearings closed on June 12, 1978, and informed the panel and the parties that "[t]he Panel will have thirty (30) days or until on or before July 12, 1978, within which to render the award."

Close to the end of this thirty-day period, by letter of July 10, 1978, the AAA notified counsel for the parties that the arbitrators had informed the AAA of their need for additional time and had requested an extension of a minimum of 30 days. The letter stated, "We hope you will agree to the extension. Enclosed is an extra copy of this letter containing a form of authorization which you may use by signing and returning it to this office. Thank you in advance for your cooperation." The authorization read, "I hereby consent to the extension of time requested by the Arbitrator to _____ for making his award," followed by date and signature lines.

By letter of July 13, 1978, the day after the original time limit for rendering the award had expired, Hines' attorney advised the AAA that his client did not consent to the requested extension. Hines' attorney reiterated this position in letters to the AAA dated July 18 and 19, 1978. On July 21, Hines served and filed his answer to Brandon's original complaint, as well as a counterclaim for breach of contract seeking $10,000 compensatory and $10,000 punitive damages.

Hines' party-appointed arbitrator refused to participate in any further proceedings. By letter of July 20, 1978, the other two arbitrators notified the AAA of their decision, ascribing various reasons to the delay and explaining their view that the 30-day time limitation for rendering the award was "procedural in nature and designed to discourage *unreasonable* delays." (Emphasis in original.) On July 27, 1978, the two arbitrators rendered a formal award in favor of Brandon in the amount of $17,710.97, plus interest, and allocated the costs of the proceedings 75 per cent to Hines and 25 per cent to Brandon.

On August 28, Brandon answered Hines' counterclaim, invoking the arbitration award as an affirmative defense. After seeking and receiving leave to amend his complaint to add a claim for confirmation of the award on January 11, 1979, Brandon moved the court to confirm the award and to enter judgment accordingly. Hines opposed the motion on the ground that the award was untimely and irregular and asked the court to vacate the award.

After a hearing, the trial court ruled on July 12, 1979, that the arbitrators had lacked authority to render an award after July 12, 1978, and that Hines had not waived that time limitation. Accordingly, the trial court denied Brandon's motion to

confirm, vacated the award, and directed the parties to "proceed in the litigation of this case."

On July 23, 1979, Brandon served a motion to amend the July 12 order to return the case to the arbitrators or to certify the case for immediate appeal in accordance with D.C.Code 1973, § 11–721(d). The trial court denied this motion on October 31, 1979. On November 14, 1979, Brandon filed a notice of appeal from the July 12 order denying his motion to confirm the award and from the October 31 order denying his motion to amend the earlier order.

## II.

The first question is whether the trial court's order—denying appellant's motion to confirm the arbitration award, vacating the award, and ordering the parties to litigation—is appealable. In order to place our discussion in perspective, we begin with a look at the role of the trial court in the arbitration process. We then examine federal precedents regarding the appealability of orders respecting arbitration and the implications for those precedents of the Supreme Court's recent interpretation of the interlocutory appeals statute, 28 U.S.C. § 1292(a)(1) (1976), in *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). In light of the federal case law, we hold that the trial court's order is appealable as an interlocutory order "dissolving" an "injunction[ ]" under D.C.Code 1973, § 11–721(a)(2)(A).

A. At common law, although an agreement to arbitrate a dispute was not contrary to public policy, *see Campbell v. American Popular Life Insurance Co.*, D.C. Sup.Ct., 8 D.C. (1 MacArth.) 246, 260 (1873), the enforceability of such an agreement was limited. "[A] mere agreement between parties, that any future differences grow-

ing out of their contract shall be decided by arbitrators, or referees, thereafter to be chosen, will not be allowed by the courts to oust their jurisdiction" over a suit on the contract. *Id.* at 257; *see Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 204, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956) (applying Vermont law); *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 120–21, 44 S.Ct. 274, 275–76, 68 L.Ed. 582 (1924); *Overby v. Barnett,* D.C.App., 262 A.2d 604, 605 (1970); *Davis v. Humphreys & Harding, Inc.*, D.C.App., 205 A.2d 309, 310 (1964); *Coles v. Redskin Realty Co.*, D.C.Mun.App., 184 A.2d 923, 926–27 (1962). The defendant's only remedy was to seek nominal damages for breach of the agreement to arbitrate. *Red Cross Line, supra* 264 U.S. at 121, 44 S.Ct. at 276; *Rubewa Products Co. v. Watson's Quality Turkey Products, Inc.*, D.C.App., 242 A.2d 609, 613 (1968); *Campbell, supra* at 259. A court, however, would treat an arbitration agreement as a bar to a suit if the parties (1) had agreed on a particular referee, *see id.* at 258; (2) had begun arbitration before the suit was filed, *see id.*; or (3) had agreed to a penalty for failure to arbitrate, such as liquidated damages or forfeiture of a bond. *See id.* at 259–60.[1] M. Domke, The Law and Practice of Commercial Arbitration §§ 1.01, 3.01–.02 (1968 & Supp.1979).

Courts today will enforce an agreement to arbitrate disputes arising in the future (a "future arbitration clause") if a statute has abrogated the common law rule. *Coles, supra* at 926–27; *see Clifton D. Mayhew, Inc. v. Pate*, D.C.App., 202 A.2d 786, 788–89 (1964); *Clifton D. Mayhew, Inc. v. Mabro Construction, Inc.*, 383 F.Supp. 192, 193, 195 (D.D.C.1974); *Legg, Mason & Co. v. Mackall & Coe, Inc.*, 351 F.Supp. 1367, 1370, 1372 (D.D.C.1972); *cf. Rubewa Products Co., supra* at 613 (appellee waived any right

1. Under the common law the arbitration agreement in the present case would be unenforceable. First, the agreement is too vague: at the time of contracting, the parties agreed only on a procedure for arbitration and did not name particular referees. Second, at the time of the suit, the agreement was still executory; the parties had not referred their dispute to arbitra-tion, much less completed that process. Third, neither the contract itself nor the AAA Rules provided any penalty for failure to arbitrate. At least in the absence of such circumstances, under the common law the court could not have ordered arbitration against the wishes of either party.

to compel arbitration under U.S. Arbitration Act).[2]

■ Even if a statute does not authorize a court to compel a party to honor an agreement to arbitrate future differences, however, a court nonetheless may stay the lawsuit if the parties—during the course of litigation—agree to arbitrate. *See Red Cross Line, supra* 264 U.S. at 121–22, 44 S.Ct. at 275–77; *Lutz v. Linthicum,* 33 U.S. (8 Pet.) 165, 177, 8 L.Ed. 904 (1834); *John W. Johnson, Inc. v. 2500 Wisconsin Ave., Inc.,* 98 U.S.App.D.C. 8, 11, 231 F.2d 761, 764 (1956); *Tomczak v. Erie Insurance Exchange,* 268 F.Supp. 185, 187–88 (W.D.Pa.

1967). The arbitration then proceeds pursuant to "a rule of court." *Red Cross Line, supra* 264 U.S. at 121–22, 44 S.Ct. at 275–77; *Lutz, supra,* 33 U.S. at 177; *John W. Johnson, Inc., supra* at 11, 231 F.2d at 764.[3]

■ However an arbitration proceeding may have begun—whether with or without court participation—once an arbitration tribunal has rendered an award, the winning party may ask the court to confirm the award and enter judgment accordingly. *See Red Cross Line, supra* 264 U.S. at 121, 44 S.Ct. at 275; 9 U.S.C. § 9 (1976); D.C. Code 1978 Supp., tit. 16 app., § 14; Super.

2. The "future arbitration clause" in the contract before us lacks such statutory enforceability. Neither the District of Columbia Uniform Arbitration Act, D.C.Code 1978 Supp., tit. 16 app., nor the U.S. Arbitration Act, 9 U.S.C. §§ 1–14 (1976), applies to this contract.

By its terms the District of Columbia Uniform Arbitration Act applies "only . . . to agreements made subsequent to its enactment" in 1977. D.C.Code 1978 Supp., tit. 16 app., § 19; *see id.* § 21. The parties here entered into their contract on July 1, 1975, before the effective date of the Act.

The U.S. Arbitration Act permits judicial enforcement of an arbitration clause in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (1976); *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967); *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 200, 76 S.Ct. 273, 274, 100 L.Ed. 199 (1956); 9 U.S.C. § 1 (1976). *See generally* M. Domke, *supra* § 4.03. Local courts have treated this Act as applicable in the District of Columbia. *See Rubewa Prods. Co. v. Watson's Quality Turkey Prods., Inc.,* D.C.App., 242 A.2d 609, 613 n.7 (1968); *Coles v. Redskin Realty Co.,* D.C.Mun.App., 184 A.2d 923, 926–27 (1962); *John W. Johnson, Inc. v. 2500 Wisconsin Ave., Inc.,* 98 U.S.App.D.C. 8, 11, 231 F.2d 761, 764 (1956); *Legg, Mason & Co. v. Mackall & Coe, Inc.,* 351 F.Supp. 1367, 1370 (D.D.C. 1972).

Courts have applied the Act, however, only to contracts involving commerce between the District and some external point. *See Rubewa Prods. Co., supra* at 611, 613 (appellee waived any right under U.S. Arbitration Act to compel arbitration of dispute arising from contract for interstate sale of turkey); *Coles, supra* at 927 (agreement to settle dispute over finder's fee for purchase of real estate in District fails to satisfy "commerce" requirement); *John W. Johnson, Inc., supra* at 11, 231 F.2d at 764 (contract to paint building in District is not a "transaction involving commerce" within the

meaning of 9 U.S.C. § 2); *Legg, Mason & Co., supra* at 1371 (contract to arbitrate according to rules of New York Stock Exchange evidences a "transaction in commerce"). *But see Clifton D. Mayhew, Inc. v. Mabro Constr., Inc.,* 383 F.Supp. 192 (D.D.C.1974) (without discussing "commerce" requirement, court stayed pending arbitration under U.S. Arbitration Act case involving contract to paint and cover walls of apartment building); 9 U.S.C. § 1 (1976) ("'commerce' . . . means commerce . . . in the District of Columbia, . . . or between the District of Columbia and any State or Territory or foreign nation").

The present case involves a contract between two District residents for renovation of a building in the District. Accordingly, under the case law, the U.S. Arbitration Act does not authorize enforcement of the "future arbitration clause" in this case.

3. This case is a "rule of court" arbitration. After Brandon had filed suit, Hines moved to dismiss on the ground that the parties had agreed to submit all differences to arbitration. Brandon responded that Hines had waived his right to arbitration, but that if arbitration were the proper solution, the court should not dismiss the action, but only stay it. Accordingly, the court stayed the suit "pending arbitration to be initiated within 30 days," and neither party sought to appeal the order. These facts demonstrate the parties' mutual assent to the arbitration proceeding and the court's endorsement of it.

Once the arbitration began, moreover, the court's supervision continued. Six months after the court entered the stay, Hines moved to set it aside on the ground that the contract was void. At the court's suggestion, the initial arbitration hearing was postponed pending resolution of Hines' motion. Ultimately, the court denied the motion, and the arbitration proceeded to its conclusion.

Ct.Civ.R. 70–I(a).[4] If an irregularity which falls within the court's scope of review occurred in the arbitration, the court may vacate the award. *See id.* 70–I(d); note 4 *supra*; Part III *infra.* It is from such an order that appellant seeks to appeal.[5]

B. Before 1971, this court had jurisdiction only of appeals from "final orders and judgments" of the then District of Columbia Court of General Sessions and from "interlocutory orders . . . whereby the possession of property is changed or affected . . . ." Pub.L.No. 88–241, § 11–741(a)(1)–

(2), 77 Stat. 478 (1963) (current version at D.C.Code 1973, § 11–721(a)(1), (a)(2)(C)). As part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.No. 91–358, 84 Stat. 473, Congress enlarged the jurisdiction of this court to include, in a fashion parallel to the jurisdiction of the United States Courts of Appeals, appeals from interlocutory orders respecting injunctions, as well as certified appeals of urgent and important questions of law. *See* Pub.L.No. 91–358, *supra* § 111 (codified at D.C.Code 1973, § 11–721(a)(2)(A), (d)).[6] Neither before nor since

---

4. Super.Ct.Civ.R. 70–I provides in full:

   CONFIRMATION OF ARBITRATION AWARD

   (a) COMPLAINT OR OTHER CLAIM. An arbitration award, the judicial confirmation of which is authorized by statute or other applicable principles of law, may be confirmed as a judgment by filing an original claim, counterclaim, cross-claim or third party claim setting forth that (1) there was a written agreement or order to arbitrate, (2) there was an award rendered pursuant to the arbitration, and (3) there are annexed to the pleading copies of the following:

   (A) the agreement or order to arbitrate;

   (B) the selection or appointment, if any, of any arbitrator or umpire other than that designated in the agreement or order;

   (C) each written extension of time, if any, within which to make the award;

   (D) the award;

   (E) each notice, affidavit or other paper used upon any application to confirm, modify, or correct the award; and

   (F) a copy of each order upon such an application.

   (b) SUMMARY PROCEEDINGS. Proceedings upon such claim shall be summary with discovery permitted only upon application to the court upon a showing of good cause.

   (c) PLEADING DEFENSES. All defenses to the claim at law or in equity shall be pleaded and stated with particularity.

   (d) REHEARING. Where the Court vacates an award, it may in its discretion, and upon a finding that such re-hearing is not contrary to law or equity, direct an arbitration re-hearing.

5. Appellant also filed a notice of appeal from the trial court's October 31 order denying his motion to amend the July 12 order to return the case to the arbitrators. The appeal properly is taken from the order vacating the award, not *from* the denial of the motion to amend. *See* 9 Moore's Federal Practice ¶ 110.08[3], at 124 (2d ed. 1980 & Supp. 1980–81) (distinguishing post-

trial motions that destroy finality from those that do not). This technical inaccuracy is insignificant. *See Sobel v. Diatz*, 88 U.S.App.D.C. 329, 330, 189 F.2d 26, 27 (1951); 9 Moore's, *supra* ¶ 203.18.

The trial court's October 31 order also refused appellant's request for certification of the appeal under D.C.Code 1973, § 11–721(d). This court does not review a trial court's denial of certification of an appeal under that statute. *See* 9 Moore's, *supra* ¶ 110.22[3] (discussing the analogous federal provision, 28 U.S.C. 1292(b) (1976)). *Cf. Hewsen v. Lynch*, D.C. App., 343 A.2d 45, 47 (1975) (the appellate court may refuse to consider questions certified by the trial court); *Plunkett v. Gill*, D.C.App., 287 A.2d 543, 544–45 (1972) (per curiam) (same).

6. D.C.Code 1973, § 11–721 provides in pertinent part:

   § 11–721. Orders and judgments of the Superior Court

   (a) The District of Columbia Court of Appeals has jurisdiction of appeals from—

   (1) all final orders and judgments of the Superior Court of the District of Columbia;

   (2) interlocutory orders of the Superior Court of the District of Columbia—

   (A) granting, continuing, modifying, refusing, or dissolving or refusing to dissolve or modify injunctions;

   . . . .

   (b) . . . [A] party aggrieved by an order or judgment specified in subsection (a) of this section, may appeal therefrom as of right to the District of Columbia Court of Appeals.

   . . . .

   (d) When a judge of the Superior Court of the District of Columbia in making in a civil case . . . a ruling or order not otherwise appealable under this section, shall be of the opinion that the ruling or order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the ruling or order may materially advance the

court reorganization has this court had occasion to address the appealability of an order vacating an arbitration award.[7]

The United States Supreme Court and various United States Courts of Appeals, however, have considered the appealability of orders relating to arbitration under the general jurisdictional statute for the federal appellate courts, 28 U.S.C. §§ 1291–92 (1976).[8] The federal courts most frequently have addressed the question of the appealability of orders relating to commercial arbitration in the context of orders issued under authority of the U.S. Arbitration Act, 9 U.S.C. §§ 1–14 (1976).

That Act provides two mechanisms for judicial enforcement of an arbitration clause: (1) a stay of litigation pending arbitration, *id.* § 3, and (2) an order compelling arbitration in a suit brought solely to obtain that relief. *Id.* § 4. Once the arbitrators have rendered the award, the Act authorizes a court to confirm the award, *id.* § 9, or to vacate or modify the award in specified circumstances. *Id.* §§ 10–11. Because the Act contains no provision regarding the appealability of these orders, appealability depends solely on the courts' interpretation of the general statute governing federal

---

ultimate termination of the litigation or case, he shall so state in writing in the ruling or order. The District of Columbia Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from that ruling or order, if application is made to it within ten days after the issuance or entry of the ruling or order. An application for an appeal under this subsection shall not stay proceedings in the Superior Court of the District of Columbia unless the judge of that court who made such ruling or order or the District of Columbia Court of Appeals or a judge thereof shall so order.

7. Our research has disclosed no case decided by this court involving an appeal from an order invalidating an arbitration award. In *American Fed'n of Gov't Employees v. Koczak & Sadler*, D.C.App., 439 A.2d 478 (1981), we held that under the District of Columbia Uniform Arbitration Act, D.C.Code 1978 Supp., tit. 16 app., § 18, an order directing arbitration is a nonappealable interlocutory order. In *Sindler v. Batleman*, D.C.App., 416 A.2d 238 (1980), we heard cross-appeals from an order *denying* a motion to vacate an award. *See id.* at 241–42; note 20 & accompanying text *infra*. In *Ballard & Assoc., Inc. v. Mangum*, D.C.App., 368 A.2d 548 (1977), we took an appeal from a related order—an order refusing to enjoin arbitration proceedings—without discussing appealability. *See id.* at 549–50; notes 14, 25 *infra*.

On several occasions we have reviewed final judgments in cases involving suits on contracts containing arbitration clauses that the parties had ignored. *See Rubewa Prods. Co., supra* at 613; *Davis v. Humphreys & Harding, Inc.*, D.C. App., 205 A.2d 309, 310 (1964); *Clifton D. Mayhew, Inc. v. Pate*, D.C.App., 202 A.2d 786, 787 (1964); *Coles, supra* at 926–27. Similarly, in *Overby v. Barnett*, D.C.App., 262 A.2d 604, 605 (1970), we reversed a trial court's final order dismissing for want of jurisdiction a suit on a contract containing an arbitration clause. *See* Part II.A. *supra*.

8. 28 U.S.C. § 1291 (1976) provides:

§ 1291. Final decisions of district courts

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme court.

28 U.S.C. § 1292 (1976) provides in pertinent part:

§ 1292. Interlocutory decisions

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or other judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

. . . .

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

appellate jurisdiction, 28 U.S.C. §§ 1291–92 (1976). *See* note 8 *supra.*

1. The federal courts have focused the most attention on appealability of orders directing or refusing to direct arbitration. Appealability has depended not on the effect of the order on the arbitration process, but on the nature and posture of the particular case.

■ Courts have held that an order compelling arbitration in a suit brought solely for that purpose, *see* 9 U.S.C. § 4 (1976), is appealable as a "final decision[ ]" under 28 U.S.C. § 1291 because the order disposes of the entire case on the merits. *See, e.g., Rogers v. Schering Corp.*, 262 F.2d 180, 182 (3d Cir.), *cert. denied*, 359 U.S. 991, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959); *Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba*, 243 F.2d 342, 344–45 (2d Cir. 1957); *Continental Grain Co. v. Dant & Russell, Inc.*, 118 F.2d 967, 968 (9th Cir. 1941); *cf. John Thompson Beacon Windows, Ltd. v. Ferro, Inc.*, 98 U.S.App.D.C. 109, 111 n.5, 112 & n.10, 232 F.2d 366, 368 n.5, 369 & n.10 (1956) (raising possibility without deciding question).[9] *See Goodall-Sanford, Inc. v. United Textile Workers*, 353 U.S. 550, 551–52, 77 S.Ct. 920, 920–21, 1 L.Ed.2d 1031 (1957) (order directing arbitration under § 301(a) of Labor Management Relations Act of 1947 is appealable final decision). Since an order refusing to compel arbitration also disposes of the entire case on the merits, it is likewise appealable as a final order under 28 U.S.C. § 1291. *See* 9

Moore's Federal Practice ¶ 110.20[4.–1], at 246 & n.3 (2d ed. 1980 & Supp. 1980–81).

■ By contrast, if one party has sued for breach of contract and the defendant moves to stay litigation pending arbitration, *see* 9 U.S.C. § 3 (1976), an order granting or denying the stay is not an appealable "final decision[ ]" under 28 U.S.C. § 1291. *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 179, 75 S.Ct. 249, 251, 99 L.Ed. 233 (1955); *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 451, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935).[10] The Supreme Court, however, has held that such an order may be an appealable interlocutory order respecting an injunction under 28 U.S.C. § 1292(a)(1), depending on the nature of the underlying action. *See Baltimore Contractors, Inc., supra* 348 U.S. at 184–85, 75 S.Ct. at 254–55.

Drawing on a line of cases establishing the so-called *Enelow-Ettelson* rule,[11] the Court in *Baltimore Contractors* explained that at common law a court of equity could enjoin proceedings in a court of law. *Id.* at 182, 75 S.Ct. at 253. Even after the merger of law and equity, the Court noted, it had held that if a court stayed a legal proceeding pending resolution of a related equitable proceeding, the stay resembled an injunction and was appealable. *Id.* at 183, 75 S.Ct. at 253; *see* note 11 *supra.* The Court then stated that, in applying this principle, it had held that if the underlying action was legal, an order denying a stay of litiga-

---

9. *But cf. Division 689, Amal. Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Capital Transit Co.*, 97 U.S.App.D.C. 4, 4–5, 227 F.2d 19, 19–20 (1955) (per curiam) (in suit for breach of agreement to arbitrate seeking injunctive relief, order denying motion for summary judgment is neither a final order nor an appealable interlocutory order refusing an injunction).

10. Although *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955) and *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935) both involved orders *denying* stays pending arbitration, the lower federal courts have applied the same reasoning to orders *granting* stays. *See, e.g., Hussain v. Bache & Co.*, 183 U.S.App.D.C. 339,

343, 562 F.2d 1287, 1291 (1977); *New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183, 187–88 (1st Cir. 1972); *Standard Chlorine, Inc. v. Leonard*, 384 F.2d 304, 307–09 (2d Cir. 1967); *cf. Travel Consultants, Inc. v. Travel Management Corp.*, 125 U.S.App.D.C. 108, 111–12, 367 F.2d 334, 337–38 (1966) (order to stay equitable action pending arbitration is not appealable but order to stay trial of legal counterclaim pending arbitration is appealable), *cert. denied*, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967).

11. *See Ettelson v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935). *See generally* 9 Moore's, *supra* ¶ 110.20[3].

tion pending arbitration was an injunctive order appealable under the interlocutory appeals statute. *Baltimore Contractors, Inc., supra* at 184, 75 S.Ct. at 254 (discussing *Shanferoke Coal & Supply Corp., supra* 293 U.S. at 452, 55 S.Ct. at 314).[12] In *Baltimore Contractors*, by contrast, the Court ruled that when the underlying action was equitable, an order denying a stay of litigation pending arbitration "was a mere order and not an injunction" under 28 U.S.C. § 1292(a)(1). *Baltimore Contractors, Inc., supra* 348 U.S. at 184, 75 S.Ct. at 254.[13]

■ In summary, if a plaintiff sues only to compel arbitration, an order granting or denying relief is an appealable "final decision[ ]." 28 U.S.C. § 1291 (1976). If, however, one party first brings a *legal* action and the other party seeks to send the dispute to arbitration through a stay of the court proceedings, an order directing or rejecting arbitration has been an appealable interlocutory order. 28 U.S.C. § 1292(a)(1) (1976). But if a party files an *equitable* action, whether the trial court's order sends the parties into—or keeps them out of—arbitration, the order has not been appealable. Appealability under federal law, therefore, has borne no relationship to the effect of the order on the arbitration process and often has turned simply on which party has won the race to the courthouse.

2. Even while enunciating the *Baltimore Contractors* rule, the Supreme Court recognized that "[t]he reliance on the analogy of equity power to enjoin proceedings in other courts has elements of fiction in this day of one form of action" and that there is "incongruity" in "taking jurisdiction from a stay in a law type and denying jurisdiction in an equity type proceeding . . . ." *Balti-*

*more Contractors, Inc., supra* at 184, 75 S.Ct. at 254. Lower courts have characterized this area of appellate jurisdiction as "obfuscated" and an "anomaly" and have followed *Baltimore Contractors* with obvious reluctance. *See, e.g., Standard Chlorine, Inc. v. Leonard*, 384 F.2d 304, 307–08 (2d Cir. 1967); *Travel Consultants, Inc. v. Travel Management Corp.*, 125 U.S.App. D.C. 108, 111–12, 367 F.2d 334–38 (1966), *cert. denied*, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967). Commentators, with less deference, have called this field of law a "wonderland," 9 Moore's, *supra* ¶ 110.-20[3], at 245, and have chastised the Court for "shirking the judicial responsibility to apply the jurisdictional statute in as nearly rational a fashion as may be." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3923, at 64 (1977).[14]

The decision of the Supreme Court last term in *Carson v. American Brands, Inc., supra*, portends an improvement in this much criticized area of law. In *Carson*, a class of black seasonal employees at a tobacco company had brought suit under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, seeking declaratory, injunctive, and monetary relief for alleged discrimination in employment. *Id.* at 81–82, 101 S.Ct. at 994–95. The parties (apparently on their own initiative) "negotiated a settlement and jointly moved the District Court to approve and enter their proposed consent decree." *Id.* at 82, 101 S.Ct. at 995. The District Court denied the motion. *Id.* The United States Court of Appeals for the Fourth Circuit sitting en banc, held that the refusal to enter the decree was neither a final "collat-

**12.** *But see Blount Bros. Constr. Co., supra* 127 U.S.App.D.C. at 99, 381 F.2d 267 (denial of stay of legal action pending arbitration not appealable; on rehearing assumed jurisdiction and held trial court had not abused discretion in denying stay).

**13.** *See* note 10 *supra.*

**14.** The commentators have expressed a preference for a uniform rule of nonappealability of stays and denials of stays of litigation pending

arbitration, on the theory that such orders are mere housekeeping rules, 11 C. Wright & A. Miller, Federal Practice and Procedure § 2962, at 623–24 (1973), and would direct the parties to the procedures for certification of appeals to resolve urgent and important questions of law under 28 U.S.C. § 1292(b) (1976), *see* 9 Moore's *supra* ¶ 110.20[3], at 245–46; 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure, § 3923, at 64–66 (1977).

eral order" nor an appealable interlocutory order. *Id.* The Supreme Court reversed, holding the order appealable as "an order 'refusing' an 'injunction . . .' . . . under [28 U.S.C.] § 1292(a)(1)." *Carson, supra* at 89, 101 S.Ct. at 999.

The unanimous Court in *Carson* set a two-part test for appealability of orders under the interlocutory appeals statute. First, the Court reasoned that because the proposed consent decree included injunctive relief, the trial court's rejection of the decree "had the practical effect" of refusing an injunction. *Id.* at 83, 101 S.Ct. at 996. Second, the plaintiff class had shown that the order might have " 'serious, perhaps irreparable, consequence[s]' " and that they could " 'effectually challenge[ ]' " the order only by immediate appeal. *Id.* at 83–85, 101 S.Ct. at 996–97 (quoting *Baltimore Contractors, Inc., supra* 348 U.S. at 181, 75 S.Ct. at 252). Specifically, the plaintiff class "might lose their opportunity to settle their case on the negotiated terms," *id.* 450 U.S. at 85, 101 S.Ct. at 997; the order thus would undermine Congress' "expressed . . . preference for encouraging voluntary settlement of employment discrimination claims." *Id.* at 88 n.14, 101 S.Ct. at 998 n.14. Another irreparable injury justifying immediate appealability was the denial of the benefit of prompt restructuring of the employer's policies. *Id.* at 88–89, 101 S.Ct. at 998–99.

*Carson* carries two implications for the appealability of orders respecting arbitration under the interlocutory appeals statute. First, *Carson* appears to abolish the need to examine the nature of the underlying lawsuit in order to determine whether a stay or a denial of a stay of litigation pending arbitration is appealable. *See* Part II.B.1.

*supra.* Although the refusal of a stay of litigation pending arbitration (unlike the refusal to enforce the consent decree in *Carson*) does not effectively deny injunctive relief on the merits of a claim, a refusal of a stay does have "the practical effect" of *preventing* arbitration by refusing to halt proceedings before the court—whether those proceedings are legal or equitable. *See Carson, supra* at 83, 101 S.Ct. at 996.[15] Similarly, an order staying litigation pending arbitration has "the practical effect" of *directing* arbitration by halting litigation—whether the litigation is legal or equitable. *See id.;* note 14 *supra.*

If *Carson* only eliminated the law/equity dichotomy of *Baltimore Contractors,* it would increase substantially the number of appealable stays and denials of stays of litigation pending arbitration and thus could conflict with the intent of Congress "to carve out [in the interlocutory appeals statute] only a limited exception to the final judgment rule." *Carson, supra* at 83, 101 S.Ct. at 996.[16] The second prong of the *Carson* test, however, resolves this problem. In addition to considering whether the order has the "practical effect" of granting or refusing an injunction, the court must evaluate whether the order inflicts a sufficiently serious injury to justify immediate appeal. *See id.* at 83, 101 S.Ct. at 996. The court may do so with reference to the legislative policy expressed in other statutes. *See id.* at 88 n.14, 101 S.Ct. at 998 n.14. In *Carson,* for example, the order rejecting the consent decree undermined Congress' "expressed . . . preference for encouraging voluntary settlement of employment discrimination claims." *Id.*

■ When we apply this second *Carson* criterion in the context of arbitration, we

---

**15.** *Cf. Buffler v. Electronic Computer Programming Inst., Inc.,* 466 F.2d 694, 699 (6th Cir. 1972) (refusal to halt arbitration proceeding is an appealable interlocutory order because court has refused to use equity powers to intervene in proceeding in another forum); *A. & E. Plastik Pak Co. v. Monsanto Co.,* 396 F.2d 710, 713 (9th Cir. 1968) (same).

**16.** In *Baltimore Contractors, Inc., supra* the Court adhered to the law/equity distinction in

part because the interlocutory appeals statute "makes an exception to the [general] requirement of finality." *Id.* 348 U.S. at 180, 75 S.Ct. at 251. By refusing appeals of stays and denials of stays pending arbitration in equitable actions, the Court was limiting appellate jurisdiction in accordance with the perceived intent of Congress. *See id.* at 181, 185, 75 S.Ct. at 251, 254.

conclude that denials—but not grants—of stays of litigation pending arbitration are appealable interlocutory orders, since only orders that frustrate (in contrast with facilitate) arbitration impose a sufficiently serious injury to justify an immediate appeal.

More specifically, if a trial court refuses to stay litigation pending arbitration, the party seeking arbitration cannot " 'effectually challenge[ ]' " the order without an immediate appeal. *Id.* at 83, 101 S.Ct. at 996 (quoting *Baltimore Contractors, Inc., supra* 348 U.S. at 181, 75 S.Ct. at 251). Otherwise, the party will suffer " 'the serious, perhaps irreparable, consequence' " of being forced to resolve the dispute by trial rather than by arbitration, a process that the parties by contract had agreed to use, that one party desires to enforce, and—of considerable significance here—a process that modern legislative policy manifestly favors in both labor and commercial settings. *Id.; see United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960); *Wilko v. Swan*, 346 U.S. 427, 431–32, 74 S.Ct. 182, 184–85, 98 L.Ed. 168 (1953); 9 U.S.C. §§ 1–14 (1976); *cf. Buffler v. Electronic Computer Programming Institute, Inc.*, 466 F.2d 694, 698 (6th Cir. 1972) (stay of arbitration proceeding deprives party of chosen method of dispute resolution, a serious consequence justifying immediate appeal).

By contrast, if a trial court stays litigation pending arbitration, for several reasons the order to arbitrate would not impose a sufficiently " 'serious . . . consequence' " on the resisting party to justify an appeal of that stay. *Carson, supra* 450 U.S. at 83, 101 S.Ct. at 996 (quoting *Baltimore Contractors,*

*Inc., supra* 348 U.S. at 181, 75 S.Ct. at 251). The party resisting arbitration in principle agreed to arbitrate disputes arising after the formation of the contract, at least in certain circumstances.[17] Because an arbitration award is not self-executing, *see* 9 U.S.C. § 9 (1976), moreover, the party resisting arbitration will have an opportunity, at the conclusion of the arbitration, to oppose enforcement of the award as a judgment.[18] Taking an appeal from a stay of litigation pending arbitration would only increase the time and expense necessary to resolve the dispute and thus would run counter to the purpose of arbitration.[19]

In summary, by focusing on the practical effect of an order and the seriousness of the injury sustained by the party seeking to appeal, *Carson* signals the demise of the *Baltimore Contractors* rule. *Carson* leads the way to "an accommodation between [the interlocutory appeals statute] and the purpose sought to be served by the United States Arbitration Act . . . ." *Stateside Machinery Co. v. Alperin*, 526 F.2d 480, 483 (3d Cir. 1975) (referring to nonappealability of an order denying a stay of arbitration). *Carson* augurs a new federal rule that only an order denying—not granting—a stay of litigation pending arbitration is appealable under 28 U.S.C. § 1292(a)(1) (1976) and is so appealable regardless of the nature of the cause of action.

3. Once the arbitration process is completed, the winner may seek judgment on the award, *see* 9 U.S.C. § 9 (1976), or the loser may move to vacate the award. *See id.* § 10. An order permitting the award to stand—either by confirming the award or by denying the motion to vacate the

---

17. Several courts have relied on this consideration in holding nonappealable orders refusing to stay arbitration—orders which, like orders staying litigation pending arbitration, permit arbitration to proceed. *See Stateside Mach. Co. v. Alperin*, 526 F.2d 480, 483–84 (3d Cir. 1975); *New England Power Co., supra* at 186.

18. *Cf. Stateside Mach. Co., supra* at 484 (same consideration leads to conclusion that refusal to stay arbitration is nonappealable); *Greater Continental Corp. v. Schechter*, 422 F.2d 1100, 1102–03 (2d Cir. 1970) (same; arbitration award not self-executing under applicable New

York law); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 86 (2d Cir. 1961) (same), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962).

19. *Cf. Greater Continental Corp., supra* at 1102 (same consideration leads to conclusion that refusal to stay arbitration is nonappealable); *Lummus Co., supra* at 86 (same). *But cf. Buffler, supra* at 698 (appeal from order denying stay of arbitration does not halt arbitration unless court stays arbitration pending appeal).

award—generally is a "final decision[ ]." 28 U.S.C. § 1291 (1976).[20] The federal courts appear to have given little attention to the appealability of an order refusing to confirm an arbitration award or vacating the award. The logic that the courts have used to determine the appealability of orders initiating the arbitration process, however, extends to this issue.

The United States Court of Appeals for the Third Circuit has held that an order vacating an arbitration award, without specifically directing any further proceedings, is a "final decision[ ]" appealable under 28 U.S.C. § 1291. *See Rogers, supra* at 182. The court reasoned that because an order compelling arbitration in a suit brought solely for that relief, *see* 9 U.S.C. § 4 (1976), is appealable as a "final decision[ ]" the order vacating the subsequent award also should be considered "final." *See Rogers, supra* at 182–83.[21] In *Stathatos v. Arnold Bernstein S.S. Corp.*, 202 F.2d 525 (2d Cir. 1953), however, the United States Court of Appeals for the Second Circuit held that an order vacating an arbitration award and resubmitting the dispute to that tribunal was not appealable. *See id.* at 525–27.[22]

No federal court appears to have addressed the question whether an order vacating an arbitration award that resulted from a stay of a prior suit on the contract is appealable.[23] Such an order could be considered merely a denial of summary judgment, which ordinarily is not appealable. *See Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966); note 9 *supra.* We have noted, however, that under the federal law established by *Baltimore Contractors, Inc., supra,* and modified by *Carson, supra,* a refusal to stay litigation pending arbitration has the practical effect of "refusing" an "injunction[ ]" under 28 U.S.C. § 1292(a)(1) (1976) and is appealable because it rejects the option of arbitration (originally chosen by the parties and favored by the legislature) and instead directs the parties to trial. *See Part II.B.2. supra.* By parity of reasoning, if a court denies a motion to confirm an arbitration award and vacates the award and, further, orders the parties out of the arbitration process and into trial, that order also would be an appealable interlocutory order. It would have the practical effect of "dissolving" the "injunction[ ]" by which the court had sent the parties to arbitration. 28 U.S.C. § 1292(a)(1) (1976). It would be appealable, moreover, because it visits on the arbitra-

20. Most federal decisions on this point have been rendered in cases involving labor arbitration, to which the U.S. Arbitration Act may or may not directly apply. *See, e.g., Washington-Baltimore Newspaper Guild Local 35 v. Washington Post Co.,* 143 U.S.App.D.C. 210, 214, 442 F.2d 1234, 1238 (1971) (assuming appealability of denial of motion to vacate); *Local 13, Int'l Longshoremen's Union v. Pacific Maritime Ass'n,* 441 F.2d 1061, 1062, 1064 & n.5 (9th Cir. 1971) (same), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 677, 30 L.Ed.2d 664 (1972); *Metal Prods. Workers Union Local 1645 v. Torrington Co.,* 358 F.2d 103, 104, 106 & n.4 (2d Cir. 1966) (same). *See generally* cases cited in 6 Moore's, *supra* ¶ 56.17[6]; 15 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3914, at 355–56 (1976 & Supp.1981).

21. Similarly, at common law, when a voluntary, independent arbitration had resulted in an award that the winner asked the court to confirm as a judgment, an order vacating the award was appealable. *See, e.g., R. King & Co. v. Grey,* 31 Tex. 22, 27 (1868); *Tennant v. Divine,* 24 W.Va. 387, 389–90 (1884). *See gen-*

*erally Annot.,* 7 A.L.R.3d 608 (1966 & Supp. 1981).

22. *But see Wells v. Southern Airways, Inc.,* 517 F.2d 132, 134 n.3 (5th Cir. 1975) (per curiam) (order directing rehearing on employee discharge is a final decision), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 78 (1980).

23. At common law courts often seem to have held nonappealable an order vacating an award rendered in the course of a pending action. *See, e.g., Hogan v. Ward,* 117 Mass. 67, 67 (1875); *Harding v. Hart,* 118 N.C. 839, 840, 24 S.E. 668, 668 (1896); *Warren v. Stancill & Randolph,* 117 N.C. 112, 112–14, 23 S.E. 216, 216 (1895); *Manlove v. Thrift,* 19 Va. (5 Munf.) 493, 494 (1817). Such an order might be appealable, however, if it resulted in the end of the pending proceedings. *See, e.g., Donovan v. Owens & Ihmsen,* 10 La.Ann. 463, 464 (1855); *Bivans v. Utah Lake Land, Water & Power Co.,* 53 Utah 601, 608–09, 174 P. 1126, 1128–29 (1918). *See generally Annot.,* 7 A.L.R.3d 608 (1966 & Supp.1981).

tion winner the serious, perhaps irreparable, consequence of denying him the relief he had sought—confirmation of the arbitration award and the "opportunity to settle" the case by arbitration, *Carson, supra* at 85, 101 S.Ct. at 997, a legislatively favored process. *See* Part II.B.2. *supra.*

In short, we conclude that the trial court's order in the present case, if issued in federal court, would be an appealable interlocutory order "dissolving" an "injunction[ ]" under 28 U.S.C. § 1292(a)(1) (1976).[24]

C. Until today, we have not had occasion to consider whether an order vacating an arbitration award is appealable. *See* note 7 *supra.* Nor, since court reorganization gave this court jurisdiction over certain interlocutory orders, have we defined what constitutes an appealable interlocutory order respecting an "injunction[ ]" under D.C. Code 1973, § 11–721(a)(2)(A).[25] Although the language of the federal appellate jurisdictional statute, 28 U.S.C. §§ 1291–92 (1976), is slightly different from the language of our own jurisdictional statute, D.C.Code 1973, § 11–721, *see* notes 6, 8 *supra,* "this Court has generally treated the two statutes in a similar fashion." *United States v. Harrod,* D.C.App., 428 A.2d 30, 31 n.1 (1981) (en banc). We find the Supreme Court's interpretation of the federal interlocutory appeals statute in *Carson, supra,* persuasive authority for our interpretation of the virtually identical language of D.C. Code 1973, § 11–721(a)(2)(A).

■ Applying the statute to the present case, we hold that the trial court's order denying appellant's motion to confirm the arbitration award, vacating the award, and ordering the parties to trial, is an appealable interlocutory order "dissolving" an "injunction[ ]." *Id.; see* Part II.B.3. *supra.*

### III.

■ On the merits, appellant contends that the trial court erred when it vacated the award on the ground that the arbitrators lacked authority to act after expiration of the 30-day period specified by the AAA Rules. We agree. We hold that because the arbitration in this case proceeded with the parties' consent and court approval and appellee failed to notify the court of his objection to continuation of the arbitrators' deliberations, the arbitrators' reasonable, two-week delay in rendering the award does not render it void.

A. "Judicial review of arbitration awards is limited," *Sindler v. Batleman,* D.C.App., 416 A.2d 238, 242 (1980), in order to attain a balance between the need for "speedy, inexpensive" dispute resolution, on the one hand, and the need to establish "justified confidence" in arbitration among the public, on the other. *R.E. Bean Construction Co. v. Middlebury Associates,* 139 Vt. 200, 204, 428 A.2d 306, 309 (1980); *see Bernhardt, supra,* 350 U.S. at 203 & n.4, 76 S.Ct. at 276 & n.4; *Burchell v. Marsh,* 58 U.S. (17 How.) 344, 349–50, 15 L.Ed. 96 (1854). Among the issues that a court may review when an award is challenged, is the question whether the arbitrators acted within the scope of their authority. *See Wilko, supra* 346 U.S. at 436, 74 S.Ct. at 187; *United States v. Farragut,* 89 U.S. (22 Wall.) 406, 420, 22 L.Ed. 879 (1874); *Burchell, supra* at 349–51; *McCormick v. Gray,* 54 U.S. (13 How.) 26, 35–39, 14 L.Ed. 36 (1851); *Sindler, supra* at 242–44; *Mancuso v. L. Gillarde Co.,* D.C.Mun.App., 61 A.2d

---

**24.** *But cf. Clark v. Kraftco Corp.,* 447 F.2d 933, 935–36 & n.3 (2d Cir. 1971) (in suit for breach of collective bargaining agreement, order denying motion for summary judgment based on actuary's findings and sending case back to actuary is neither a final order nor an appealable interlocutory order).

**25.** In *Ballard & Assoc., Inc., supra,* we entertained an appeal from an order refusing to enjoin arbitration without specifying the provision conferring jurisdiction on this court or

raising any question of appealability. *See id.* at 549–50. Apparently, the plaintiff in that case sued only for an injunction against arbitration and the trial court simply denied the motion. *See id.* It appears, therefore, that the denial of the injunction was a "final order[ ]" under D.C. Code 1973, § 11–721(a)(1), not an interlocutory order "refusing" an "injunction[ ]" under *id.* § 11–721(a)(2)(A). *Cf. Rogers, supra* at 182 (order compelling arbitration is appealable "final decision").

677, 678–79 (1948); *Marceron v. Chevy Chase Services, Inc.*, 103 U.S.App.D.C. 303, 306, 258 F.2d 155, 158 (1958); 9 U.S.C. § 10 (1976); D.C.Code 1978 Supp., tit. 16 app., § 12(a). *See generally* Comment, *Judicial Deference to Arbitral Determinations: Continuing Problems of Power and Finality*, 23 U.C.L.A. L.Rev. 936, 948–62 (1976). On this basis, courts have considered whether an arbitration award is invalid because rendered out of time.

At common law an arbitration award was void if made after the time limitation specified by the parties. *See Goldsborough v. McWilliams*, 2 D.C. (2 Cranch) 401, 402–03 (1823). Even in this century some courts have continued to recognize the mandatory character of time limitations on awards, whether specified by statute, rule, or contract. *See e.g., Huntington Alloys, Inc. v. United Steelworkers*, 623 F.2d 335, 337–39 (4th Cir. 1980); *Brotherhood of Railway & Steamship Clerks v. Norfolk Southern Ry. Co.*, 143 F.2d 1015, 1017 (4th Cir. 1944); *Marsala v. Valve Corp. of America*, 157 Conn. 362, 365–69, 254 A.2d 469, 471–72 (1969); *Fagnani v. Integrity Finance Corp.*, 53 Del. 193, 199, 167 A.2d 67, 71 (1960); *R.E. Bean Construction Co., supra* 139 Vt. at 209, 428 A.2d at 311.[26] *See generally* M. Domke, *supra* § 29.01; 16 S. Williston, Contracts § 1920A, at 265–67 (3d ed. 1976); Annot., 56 A.L.R.3d 815, § 3 (1974).

This rule rests on the premise that, as in an agency relationship, the parties have delegated to the arbitrators only specified powers. *See Marsala, supra* 157 Conn. at 365, 254 A.2d at 470–71; *Fagnani, supra* 53 Del. at 198, 167 A.2d at 70; *R.E. Bean Construction Co., supra* 139 Vt. at 209, 428 A.2d at 311. The passing of the stated time period for rendering the award, therefore, automatically deprives the arbitrators of

their authority. *See Brotherhood of Railway & Steamship Clerks, supra* at 1017–19; *Marsala, supra* 157 Conn. at 369, 254 A.2d at 472; *Fagnani, supra* 53 Del. at 199, 167 A.2d at 71; *R.E. Bean Construction Co., supra* 139 Vt. at 209, 428 A.2d at 311.

■ Because the parties establish the arbitrators' authority, however, they also can enlarge it in various ways. They may extend the time period for rendering the award by mutual agreement. *Brotherhood of Railway & Steamship Clerks, supra* at 1017; *Marsala, supra* 157 Conn. at 369, 254 A.2d at 472; *Fagnani, supra* 53 Del. at 198, 167 A.2d at 70; *see Huntington Alloys, Inc., supra* at 338. Or, they may waive the time limitation by consent implied from conduct during arbitration. *Fagnani, supra* 53 Del. at 207, 167 A.2d at 75; *see Huntington Alloys, Inc., supra* at 338; *Brotherhood of Sleeping Car Porters v. Pullman Co.*, 200 F.2d 160, 164 (7th Cir. 1952); *R.E. Bean Construction Co., supra* 139 Vt. at 209, 428 A.2d at 311–12.[27] *See generally* M. Domke, *supra* § 29.01; 16 S. Williston, *supra* § 1920A, 267; Annot., 56 A.L.R.3d 815, §§ 11–15 (1974 & Supp.1981).

Recently, and particularly in cases involving collective bargaining agreements, courts have held that time limitation on rendering arbitration awards—whether specified by statute, rule, or contract—are "directory." *See, e.g., Local 560, International Brotherhood of Teamsters v. Anchor Motor Freight, Inc.*, 415 F.2d 220, 223–26 (3d Cir. 1969); *West Rock Lodge No. 2120, IAM v. Geometric Tool Co.*, 406 F.2d 284, 286–87 (2d Cir. 1968); *Brotherhood of Sleeping Car Porters, supra* at 163–64; *Danbury Rubber Co. v. Local 402, United Rubber Workers*, 145 Conn. 53, 54–60, 138 A.2d 783, 784–86 (1958); *International Brotherhood of Teamsters Local 145 v. Shapiro*, 138 Conn. 57, 67,

**26.** *But cf. Public Util. Constr. & Gas Appliance Workers Local No. 274 v. Public Serv. Elec. & Gas Co.*, 35 N.J.Super. 414, 416–21, 114 A.2d 443, 444–47 (generally award is invalid if made after time specified by contract, rule, or statute; but when only agency rule and not contract specified time period and untimeliness was due only to fault of arbitrators, not parties, a party could obtain order compelling second

arbitration), *cert. denied*, 19 N.J. 333, 116 A.2d 828 (1955).

**27.** *But see Marsala v. Valve Corp. of America*, 157 Conn. 362, 369, 254 A.2d 469, 472–73 (1969) (when statute provided award made out of time "shall have no legal effect," parties could not waive time limitation, but could only extend it through statutory procedure).

82 A.2d 345, 350 (1951); *In re arbitration between State Department of Taxation & Finance and Valenti,* 57 A.D.2d 174, 176, 393 N.Y.S.2d 797, 799 (1977).[28] Under this rule, "the expiration of the [time limitation does] not of itself terminate the authority of the arbitrator or automatically invalidate a late award." *Anchor Motor Freight, Inc., supra* at 224; *see Brotherhood of Sleeping Car Porters, supra* at 163; *Danbury Rubber Co., supra* at 145 Conn. 54–55, 59, 138 A.2d at 784, 786. Rather, the time limitation is a goal, set to encourage prompt determination of the issue submitted to arbitration. *See Shapiro, supra* at 138 Conn. 67, 82 A.2d at 350.

■ If a time limitation is directory, "[t]he consent of parties [is] not necessary to the continuance for a reasonable time of the arbitrator's authority to decide the controversy which then [is] under his consideration." *Anchor Motor Freight, Inc., supra* at 225; *see Danbury Rubber Co., supra* 145 Conn. at 59, 138 A.2d at 786. A party, however, can terminate the deliberations (1) by giving notice after a reasonable time (but before rendition of the award) that the party will withdraw consent to the continuance as of a reasonable date, *Anchor Motor Freight, Inc., supra* at 225; *West Rock Lodge No. 2120, IAM, supra* at 286, or (2) by showing actual prejudice from the delay. *Anchor Motor Freight, Inc., supra* at 225; *West Rock Lodge No. 2120, IAM, supra* at 286; *Danbury Rubber Co., supra* 145 Conn. at 59–60, 138 A.2d at 786.

A time limitation on rendering an award also has been held "directory" when the arbitration has proceeded by rule of court. *See Tomczak v. Erie Insurance Exchange, supra* at 189; note 3 & accompanying text *supra.* In *Tomczak,* after one of the parties

had filed suit, the parties agreed to submit their dispute to an AAA arbitrator. *Id.* at 187. The court accordingly entered an order directing the parties to arbitration. *Id.* at 187–88. The pertinent AAA rule provided that " '[t]he Arbitrator shall render his Award promptly and, unless otherwise agreed by the parties, or specified by law, not later than thirty days from the date of the close of the hearing . . . .' " *Id.* at 189 n.19 (quoting AAA Accident Claims Tribunal Rules, Rule VII, § 32). By the terms of this rule, the arbitrator's award was due on February 23, but the award was not rendered until March 9. *Id.* at 188. When the plaintiff moved for judgment on the award, the defendant protested that the award was untimely and, consequently, invalid. *Id.* at 189.

The court granted the plaintiff's motion to confirm the award, reasoning that "in the circumstances of this case," the AAA rule was "merely directory and was superseded by the order of the court." *Id.* The court further concluded that the arbitrator had rendered the award within a reasonable time after the expiration of the initial 30-day period. *See id.* The court noted that the parties and the administrator had expended "considerable time and effort" in an arbitration conducted "under the auspices of the court." *Id.* The two-week delay in rendering the award was "excusable" and de minimis. *Id.* To vacate the award based on "a superficial technicality," the court stated, "would visit a harsh and unwarranted penalty upon the plaintiff . . . ." *Id.*

We believe that the *Tomczak* decision is essentially sound. Whether or not the common law rule still applies to an independent, voluntary arbitration,[29] we conclude that it

28. Under an earlier statute, New York courts had held time limitations mandatory. *See In re Arbitration between Rosenthal, Inc. and Tannhauser,* 304 N.Y. 812, 814, 109 N.E.2d 470, 471 (1952); *Broadway-40th St. Corp. v. Manhattan Co.,* 296 N.Y. 165, 167, 71 N.E.2d 451. 452 (1947) (per curiam). The new statute in force at the time of *In re arbitration between State Dep't of Taxation & Finance and Valenti,* 57 A.D.2d 174, 393 N.Y.S.2d 797 (1977), however,

requires a finding of prejudice before an untimely award may be held unenforceable. *Valenti, supra* at 176, 393 N.Y.S.2d at 799.

29. Recently, in *Barker v. Government Employees Ins. Co.,* 339 F.Supp. 1064 (D.D.C.1972), the court upheld over a claim of untimeliness an award resulting from an arbitration that apparently had proceeded without court participation. *See id.* at 1065, 1068. Without stating clearly whether it considered mandatory or di-

does not control an arbitration—such as the one in this case—conducted by rule of court.

At common law, in a voluntary, independent arbitration, either party could revoke the submission at any time before the arbitrators had rendered the award, as long as the party acted without fraudulent intent. *Bernhardt, supra* 350 U.S. at 204, 76 S.Ct. at 276 (applying Vermont law); *Sangster v. Quantrill,* 1 Hay. & Haz. 18, 19–20 (D.C. 1841); *R.E. Bean Construction Co., supra* 139 Vt. at 209, 428 A.2d at 311. The authority of the arbitrators thereupon ended, and any award thereafter was null and void. *Sangster, supra* at 20. The rule was different, however, for court-authorized arbitration: "Neither party has a right to revoke a submission made under a rule of Court. It would be a contempt of the Court." *Masterson v. Kidwell,* 2 D.C. (2 Cranch) 669, 670 (1826). The United States Court of Appeals for the District of Columbia Circuit recently has adhered to this view. *See John W. Johnson, Inc., supra* at 10–14, 231 F.2d at 763–67.[30] *See generally* 6A A. Corbin, Contracts § 1438, at 413 (1962).

Thus, when in the course of a pending lawsuit, the parties agree—as in this case, *see* note 3 *supra* —to submit their dispute to arbitration and the court "yield[s] its prerogatives to the procedure which the parties substituted for the action of the court,"

*John W. Johnson, Inc., supra* 98 U.S.App. D.C. at 14, 231 F.2d at 767, the parties take on an even greater obligation to pursue the arbitration in good faith than their original contract required.[31] They must take care not to expose the court to "the contumely" of bad faith "after [the court's] acceptance of and reliance upon the hearings then in progress in lieu of the action the court otherwise was free to take." *Id.* at 13, 231 F.2d at 766.

■ Accordingly, we hold that in a court-approved arbitration, if the arbitrators request additional time to render their award, the parties have a good-faith duty to grant a reasonable extension. Each party's consent, moreover, is presumed unless the party promptly makes known to the court his objection and the grounds therefor. The court then can determine whether the requested extension is reasonable and how much more time, if any, the arbitrators may have to render their award.

B. In this case, the court stayed appellant's breach of contract action pending arbitration and permitted the arbitration to proceed with the parties' consent and court approval. *See* note 3 & accompanying text *supra.* The governing AAA Construction Industry Arbitration Rules contained the standard 30-day time period for rendering the award.[32] When the arbitrators requested additional time to reach their decision,

rectory the 30-day time limitation of the applicable AAA rules, the court concluded that the lateness of the award did "not provide a basis upon which to reverse the arbitrator's award in view of the fact that (1) respondent waived this objection, (2) respondent contributed to the delay, and (3) respondent was not prejudiced by the delay." *Id.* at 1067.

30. In *John W. Johnson, Inc., supra*, the trial court authorized arbitration to proceed by rule of court. *See id.* at 10–14, 231 F.2d at 763–67. One of the parties (the appellant) gave notice of withdrawal before rendition of the award— without the appellees' consent or the court's approval. *Id.* at 9, 231 F.2d at 762. On motion of the appellees, the court allowed the arbitrators ten days to conclude their deliberations and ultimately entered judgment on the award. *Id.* at 9–10, 231 F.2d at 762–63. On appeal, the court held that the award was valid because

the rule of court had overridden the appellant's common law privilege unilaterally to withdraw his agreement before issuance of the award. *Id.* at 10–14, 231 F.2d at 763–67.

31. *See generally* Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv.L.Rev. 369 (1980).

32. AAA Construction Industry Arbitration Rules, § 41 provides:

Section 41. TIME OF AWARD—The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties, or specified by law, not later than thirty days from the date of closing the hearings, or if oral hearings have been waived, from the date of transmitting the final statements and proofs to the arbitrator.

the AAA sent its standard authorization letter to the parties.[33]

When appellee received this letter, he repeatedly informed the AAA that he refused to consent to the extension. However, he never notified the court that he considered the arbitrators to be proceeding without authority. Earlier in the arbitration, when appellee (allegedly) learned that appellant (allegedly) was unlicensed, appellee had moved to set aside the stay on the ground that the contract, including the arbitration clause, was void. Similarly, when the arbitrators continued to deliberate after the expiration of the initial 30-day period, appellee promptly should have brought to court his challenge to the arbitrator's authority. In the absence of such a motion, his consent to a reasonable extension must be presumed.

The arbitrators' delay in rendering their award, moreover, was reasonable.[34] The initial 30-day time period expired on July 12, 1978. The arbitrators informally notified the AAA of their decision on July 20 and issued their formal award on July 27, only 15 days after the original deadline. The parties and the arbitrators had spent "considerable time and effort" over the past months in an arbitration conducted under the aegis of the court. *Tomczak, supra* at 189. The arbitrators had information from three hearings, voluminous exhibits, and the parties' briefs to consider in making their determination. The two-week delay here, as in *Tomczak*, was "excusable" and de minimis. *Id.*

Accordingly, we reverse the trial court's order and remand this case for entry of judgment on the arbitration award.

*Reversed and remanded.*

MACK, Associate Judge, dissenting in part:

I am persuaded by Judge Ferren's thorough analysis of the appealability issue and I concur in his conclusion that we have jurisdiction to entertain this action. Further, I have no reason to quarrel with the majority's prenouncement that, in court-approved arbitration the parties have a good faith duty to grant a request for a reasonable extension of the time for making the award and that each party's consent to such extension is "presumed" unless the party promptly makes known to the court his objection and the grounds therefor. The problem here is that the trial court (and the parties before it) had no knowledge of the presumption which we create today in this case of first impression.

The trial court, after a hearing on appellant's motion to confirm the arbitration award, found that parties had specifically contracted to abide by the Rules of the American Arbitration Association including that rule providing that the extension of the time for award can only be accomplished through the mutual consent of the parties. It found that the award was to be rendered by July 12, 1978, and that appellee (who received the request for extension on the afternoon of July 11, 1978) had by letters of July 13, 18, and 19, 1978, advised the Tribunal Administrator of the AAA that he did not consent to the requested extension. The court noted that it had not ordered a

---

**33.** AAA Construction Industry Arbitration Rules, § 39 provides:

Section 39. EXTENSIONS OF TIME—The parties may modify any period of time by mutual agreement. The AAA for good cause may extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any such extension of time and its reason therefor.

**34.** After the 30-day time limitation expired, appellee's party-appointed arbitrator refused to participate in further deliberations, and appel-

lant's party-appointed arbitrator and the neutral arbitrator rendered the award. AAA Construction Industry Arbitration Rules, § 28 authorizes a majority—rather than a unanimous —award:

Section 28. MAJORITY DECISION—Whenever there is more than one arbitrator, all decisions of the arbitrators must be by at least a majority. The award must also be made at least a majority unless the concurrence of all is expressly required by the arbitration agreement or by law.

time for award; relying upon some of the ample authorities cited by the majority here, it found that the arbitrators were without authority to render the award on July 27, 1978, and it ordered the parties to trial.

I cannot find that the trial court abused its discretion or that its finding was clearly erroneous. Moreover, I would not place upon appellee after-the-fact, the burden of notifying the court of a condition which by contract or law he was not then required to do. I respectfully dissent.